## 45440. HOLIDAY v. THE STATE.
### (369 SE2d 241)

HUNT, Justice.

Dallas Bernard Holiday was convicted by a jury of malice murder, armed robbery, two counts of burglary, and possession of a firearm by a convicted felon. He was sentenced to death for the murder.[1]

1. On March 11, 1986, the victim, Leon Williams, went for his usual early-morning walk. His wife often accompanied him, but this time she remained home. Half an hour after he left, a nearby neighbor, Barbara Buckner, ran to the Williams' house and asked to use the telephone — someone was breaking into her house. The Williams' telephone was not working, so Mrs. Williams drove Mrs. Buckner to the police station.

The defendant was still in the Buckner home when the police arrived, but he ran out the back door and eluded capture for nearly an hour. A pistol he dropped during the chase turned out to have been one of two taken in another burglary the previous evening.

Meanwhile, Mrs. Williams returned home. By lunchtime, her husband still had not returned from his walk. She began checking around, trying to find him, and could not. His disappearance was reported to the police that afternoon.

---

[1] The crimes were committed March 10 and 11, 1986. The defendant was indicted on May 12, 1986, and the case was tried November 17 through November 21, 1986. A motion for new trial was timely filed and, after hearing, was denied December 28, 1987. The case was docketed in this court on January 28, 1988, and after the defendant was granted an extension of time to file his enumerations of error, the case was argued orally April 11, 1988.

Shortly after 5:00 p.m., the sheriff discovered signs of a struggle at an old pond site. He tracked blood drippings to the edge of a nearby woods, where he found Williams' body.

Williams had been hit on the head at least seven times with a blunt object. The autopsist testified the wounds were consistent with having been inflicted by the butt of a gun, or by a brick similar to one found near the body. Williams had a number of defensive wounds on his hands, including a laceration of one finger that almost completely severed the finger. The cause of death was a gunshot wound to the head.

A ballistics comparison showed that a bullet recovered from under the victim's scalp had been fired from the .32 caliber pistol dropped by Holiday as he attempted to elude the police. Pieces of another gun left at the scene of the struggle — a broken piece of the stock, a magazine spring and a follower — were compared to and fit the .380 automatic obtained from Holiday's female companion. Blood on the .380 pistol and on the brick found near the body was consistent with that of the victim.

Holiday was interrogated after his arrest, and he admitted stealing the two guns in a burglary the previous evening. He stated that he was riding his bicycle when he saw the victim walking, and decided to hit him on the head from the rear with one of the guns, knock him out, and take his money. The blow failed to render the victim unconscious, however, so Holiday ordered him toward the woods. While Williams begged him not to kill him, Holiday took his wallet and his watch and ordered him to lie down. Then he got a brick and hit him two or three times on the head. Williams was still alive, so Holiday took out his other gun — the one he had not hit him with — and shot him. Then, Holiday stated, he decided to burglarize another house. He rang the doorbell, and when no one answered (Mrs. Buckner was in the shower) he went to the rear, broke out the glass in a sliding-glass door, and entered the house. While he was looking for something to steal, the police arrived.

The evidence supports Holiday's conviction on all counts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Holiday first contends this court lacks jurisdiction over the case because he has pending in the trial court a motion for reconsideration of the denial of his motion for new trial. We do not agree. When the trial court denied the motion for new trial, the case became ripe for appeal. OCGA § 5-6-38. The trial court did not grant a stay of its order denying the motion for new trial, compare *Austin v. Carter*, 248 Ga. 775 (1) (285 SE2d 542) (1982), and a defendant cannot force the case to remain in the trial court indefinitely by the continued filing of motions to reconsider.

3. Upon his arrest, Holiday was taken to jail. Investigator Hat-

taway talked to him briefly, but Holiday stated that he was tired and asked for two aspirins. These were provided, and Holiday was taken to a cell and allowed to rest for over an hour. Then Hattaway talked to him again about the two burglaries, which Holiday admitted committing.

Later that evening, after the body was found, the sheriff talked to Holiday for a few minutes. Holiday stated that he was sleepy and wanted to go to bed. He was allowed to do so, and the sheriff and investigator Williamson talked to Holiday early the next morning, and Holiday admitted killing Leon Williams.

Early that afternoon, assistant district attorney McClain talked to Holiday for two reasons: to obtain more details about Holiday's activities, and to discuss the recently-discovered fact that the victim had been shot, as well as beaten. The result of this interview was a lengthy written statement that was read into evidence at trial.

The trial court conducted a pre-trial *Jackson-Denno* hearing, and determined that the statements were voluntarily made, after the defendant had knowingly and intelligently waived his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Holiday contends this finding was erroneous, claiming that his interrogators failed to honor "scrupulously" his invocation of his right to remain silent. See *Michigan v. Mosley*, 423 U. S. 96 (96 SC 321, 46 LE2d 313) (1975). In fact, the record shows that Holiday's rights *were* honored and that he was given the opportunity to "control the time at which questioning occur[red], the subjects discussed, and the duration of the interrogation." Id. 96 SC at 326. The record supports the trial court's findings. *Berry v. State*, 254 Ga. 101, 104 (326 SE2d 748) (1985).

Holiday also complains of testimony at trial in reference to custodial statements allegedly not dealt with at the *Jackson-Denno* hearing. However, he did not object contemporaneously to any of this testimony,[2] and we have held that, absent a contemporaneous objection, the trial court is not required to conduct a *Jackson-Denno* hearing sua sponte. Moreover, we note that except for Holiday's spontaneous statement, upon his capture, that he "knew his rights," which was not the product of interrogation, and therefore is not covered by *Miranda*, see *Findley v. State*, 251 Ga. 222 (1) (304 SE2d 898) (1983), the testimony complained of here was based on statements made by Holiday during his interview with investigator Hattaway on the afternoon of March 11, and this interview was dealt with at the *Jackson-*

---

[2] Holiday maintained a standing objection at trial to the admission of the "very same statements" covered by the *Jackson-Denno* hearing. No objections were raised as to any additional statements.

*Denno* hearing.[3]

4. Absent a motion to sever, there was no error in trying together five of the six counts of the indictment.[4] *McCloud v. State*, 174 Ga. App. 672 (3) (331 SE2d 54) (1985).

5. The trial court did not err by excusing a prospective juror who stated, after reflection, that she simply could not vote to impose a death sentence. *Alderman v. State*, 254 Ga. 206 (4) (327 SE2d 168) (1985).

6. Holiday was not denied an effective and thorough voir dire examination. *Curry v. State*, 255 Ga. 215 (2 b) (336 SE2d 762) (1985). His contention that the trial court "precluded defense counsel from asking jurors whether they could sentence Mr. Holiday to life imprisonment 'even if there were aggravating circumstances there,' " Appellant's brief, p. 33, is factually incorrect; that was not the question he asked and the trial court did not sustain the objection to the question that he *did* ask. Further, the court did not err by finding both a husband *and* wife to be qualified to serve as jurors. *Childs v. State*, 257 Ga. 243 (10) (357 SE2d 48) (1987).

7. Law enforcement officers testified that based on certain, unspecified information they uncovered during their investigation, they went to the home shared by the defendant and his brother, and obtained the victim's wallet, and they went to the home of Rosa Gibbons, who gave them a bag containing items taken in the burglaries. The brother testified that he had found the wallet under the sofa in their house. Gibbons testified that she had been asked by Shirley Sanders (the defendant's female companion) to hold the bag. Holiday contends that all of this testimony was hearsay.

Gibbons' testimony that she was keeping something at the request of someone else was not hearsay; it was simply a statement of fact. See *Reed v. State*, 249 Ga. 52 (4) (287 SE2d 205) (1982); Cleary, McCormick on Evidence, Ch. 24. § 249, p. 733 (3rd ed. 1984). The defendant's brother testified to no hearsay, and since the law officers testified only that they received certain information (and not what that information was) and, based on that information, took certain action, they testified to no hearsay either. Compare OCGA § 24-3-2.

8. Assistant district attorney McClain took the final pre-trial statement from Holiday. He was listed as a witness on the list furnished to the defendant under OCGA § 17-7-110. Holiday moved to

---

[3] See Transcript, hearing of November 10, 1986 at p. 135, which shows that Holiday stated to Hattaway that he had thrown a gun and some coins into a pond. Although Holiday's divulgence of the location of his shoes was not specifically mentioned at the pre-trial hearing, it is clear that it occurred during Holiday's interviews with Hattaway the afternoon of March 11.

[4] Count Six was a recidivism count. See OCGA § 17-10-7.

disqualify McClain from acting as an attorney in the case. See DR 5-102 of the Georgia Code of Professional Responsibility, 252 Ga. at 613. The district attorney consented to the motion, and took McClain off the case, stating that henceforth he would not be involved in the case other than as a witness.

When McClain testified at trial, Holiday's attorney attempted to cross-examine him about the motion for disqualification. In response to the state's objection, he stated to the court that he wished to ask McClain "whether [the motion] was granted and whether or not he agreed with it; whether it has anything to do with his partiality and testimony today. . ." The trial court ruled that he could ask McClain if he has any partiality in the case, and if he answered yes, then Holiday could ask him why. Otherwise, the court would not let him "get into motions that were made now and the rulings of the Court on motions. . . ."

As we stated in *Hicks v. State*, 256 Ga. 715 at 720-21 (352 SE2d 762) (1987), the trial court may exclude relevant evidence

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

There was no abuse of discretion here.

9. Holiday's contention that the district attorney and all of his staff should have been disqualified under a theory of imputed disqualification is answered adversely to his contention by *Frazier v. State*, 257 Ga. 690 (9) (362 SE2d 351) (1987).

10. Holiday contends that the trial court erred by refusing to allow him to ask the state's serologist whether the blood on his clothes was consistent with being his blood and not the victim's. However, Holiday failed to establish a chain of custody as to the blood sample taken from him, and absent this foundation, his question was improper.[5]

11. Holiday contends that prejudicial, inflammatory and irrelevant matters were injected into the trial.

(a) The trial court should not have referred to the recidivist count of the indictment (Count Six) when he administered the oath

---

[5] We note that the serologist's report states that in regard to type and all identifiable enzymes the defendant and the victim had the same kind of blood. Hence, at most, the serologist's answer could only have established that the blood on the defendant's clothes was consistent with both the defendant *and* the victim. The marginal value of such an answer, in view of the lack of evidence that the defendant was injured at all and the evidence showing that the victim was terribly injured and bloody, probably explains why Holiday did not attempt to establish a chain of custody.

to the prospective jurors. See *Riggins v. Stynchcombe*, 231 Ga. 589, 593 (203 SE2d 208) (1974). However, the court only said the *word* "recidivist"; the court did not read that count of the indictment. Moreover, Holiday's prior record was introduced in evidence to prove Count Five, alleging the possession of a firearm by a convicted felon.[6] In these circumstances, the brief reference to the recidivist count was harmless error.

(b) When the trial judge introduced the attorneys and the court personnel to the jury during his preliminary instructions just before the opening statements were delivered, he stated that Holiday's lead attorney was a public defender. We fail to see how this introduction prejudiced the defendant.

(c) Testimony that the defendant "was yelling about he knew his rights, he knew his rights" was elicited on cross-examination by the *defendant*, when his attorney asked *twice* whether the defendant had said anything when he was tackled by one of his pursuers. Holiday may not complain of this testimony. *Felker v. State*, 252 Ga. 351 (11) (314 SE2d 621) (1984).

(d) There was no error in allowing in evidence Holiday's statement even though there was a reference indicating he had possibly committed "also another and separate offense." *Ingram v. State*, 253 Ga. 622 (18 a) (323 SE2d 801) (1984).

(e) The state's evidence of flight was neither irrelevant nor unreliable. *Quick v. State*, 256 Ga. 780 (5) (353 SE2d 497) (1987).

(f) Holiday did not raise at trial an objection under *Booth v. Maryland*, 482 U. S. ___ (107 SC 2529, 96 LE2d 440) (1987). Thus, we need not address the merits of his *Booth* issue on appeal. See *Cohen v. State*, 257 Ga. 544, 547 (361 SE2d 373) (1987). However, we note that it does not appear that the state offered evidence to show the impact of the victim's death on his family; the mere fact that his wife testified at the guilt phase of the trial about the circumstances surrounding his disappearance, would not, in our view, violate *Booth*.

12. Holiday contends the trial court erred by instructing the jury on felony murder as well as malice murder, where the indictment charged only the latter. See *Crawford v. State*, 254 Ga. 435 (1) (330 SE2d 567) (1985). The state responds that the indictment was sufficient to allege both. We conclude that since the jury returned a verdict specifying that it found the defendant guilty of "malice murder," any issue of felony murder is moot.

13. Absent a request, the trial court did not err by failing to instruct the jury on the law of voluntary and involuntary manslaughter.

---

[6] As noted previously, Holiday did not seek a severance. See *Head v. State*, 253 Ga. 429 (322 SE2d 228) (1984).

*Davis v. State*, 255 Ga. 598 (15) (340 SE2d 869) (1986).

14. The court's instructions relating to the credibility of witnesses were not improper. *Noggle v. State*, 256 Ga. 383 (4) (349 SE2d 175) (1986); *Felker v. State*, supra, 252 Ga. at 379-380.

15. The court did not err in its response to the jury's request to be re-instructed on the elements of malice and felony murder. *Williams v. State*, 249 Ga. 6 (6) (287 SE2d 31) (1982).

16. The record does not show that Holiday was absent during a portion of the re-charge, and, hence, does not support Holiday's claim of error in this regard.

17. The prosecutor did not argue improperly to the jury. *Walker v. State*, 254 Ga. 149 (14) (327 SE2d 475) (1985).

18. The trial court did not err by refusing to sentence Holiday for the non-capital felony offenses of which he was convicted *before* the commencement of the sentencing phase of the trial. See OCGA § 17-10-2.

19. Holiday complains of the court's sentencing-phase instructions to the jury.

(a) The court did not err by telling the jury that it could "recommend" the sentence on the murder count of the indictment, where it was clear from the instructions as a whole that its recommendation would be binding on the trial court. See *Spivey v. State*, 253 Ga. 187, 192 (319 SE2d 420) (1984).

(b) The § b (7) aggravating circumstance is not facially invalid. *Gregg v. Georgia*, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976). There was no lack of unanimity as to the § b (7) finding, because the jury returned this finding in the conjunctive, not the disjunctive. *Lipham v. State*, 257 Ga. 808 (7) (364 SE2d 840) (1988).

(c) Holiday's requests to charge that the state had the burden to disprove the existence of mitigating circumstances, and that the jury must find a mitigating circumstance to exist if there is *any* evidence to support it, or (alternatively) *substantial* evidence to support it, were not correct statements of law and the trial court did not err by refusing to give them in charge. See *Parker v. State*, 256 Ga. 543 (9) (350 SE2d 570) (1986).

(d) The court did not err by telling the jury that its verdict must be unanimous. *Romine v. State*, 256 Ga. 521 (2) (350 SE2d 446) (1986).

(e) It was not error to refuse other requests to charge whose principles were adequately addressed by the charge the court did give. *Kelly v. State*, 241 Ga. 190 (4) (243 SE2d 857) (1978).

20. There was no improper restriction of mitigating evidence. *Quick v. State*, 256 Ga. 780 (9) (353 SE2d 497) (1987); *Ingram v. State*, 253 Ga. 622 (11) (323 SE2d 801) (1984); *Felker v. State*, 252 Ga. 351 (18) (314 SE2d 621) (1984); *Wilson v. State*, 250 Ga. 630 (12)

(300 SE2d 640) (1983).

21. The jury found as aggravating circumstances:

(1) the offense of murder was committed while the defendant was engaged in the commission of an armed robbery; (2) the offense of murder was committed while the defendant was engaged in the commission of the offense of kidnapping with bodily injury; and (3) the offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved (a) depravity of mind, and (b) torture to the victim prior to the death of the victim.

Record, p. 232. See OCGA §§ 17-10-30 (b) (2) and (b) (7). The evidence supports these findings. OCGA § 17-10-35 (c) (2).

22. The sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor and is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. The similar cases listed in the Appendix support the imposition of the death penalty in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 23, 1988 —
RECONSIDERATION DENIED JULY 13, 1988.

*Alan P. Layne, John J. Pilcher II,* for appellant.
*Richard A. Malone, District Attorney, William H. McClain, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.

APPENDIX.

*Jefferson v. State,* 256 Ga. 821 (353 SE2d 468) (1987); *Davis v. State,* 255 Ga. 598 (340 SE2d 869) (1986); *Roberts v. State,* 252 Ga. 227 (314 SE2d 83) (1984); *Berryhill v. State,* 249 Ga. 442 (291 SE2d 685) (1982); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975).