## S94A0403. GOBER v. THE STATE.
(443 SE2d 616)

SEARS-COLLINS, Justice.

Brian Larone Gober was convicted in Fulton County Superior Court of the felony murder and armed robbery of Michael Dixon.[1] The evidence was sufficient for the jury to find that on the night of November 25, 1992, Gober and co-defendants Harry Shaaggir and Harold Jones were in the parking lot of Shooter's on Old National Highway in Atlanta. When Gober and his companions saw the victim get out of his black 1986 Mercedes with gold trim and into a friend's white car, they discussed the possibility that Dixon had money. When Dixon got out of the white car, Shaaggir shot Dixon four times with a nine millimeter weapon, killing him, and removed Dixon's watch and jewelry. Shaaggir and Gober left in Dixon's car, and Shaaggir drove Gober home. Gober kept the victim's cellular car telephone.

1. The evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Gober is guilty of the crimes charged. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Gober made calls on the victim's cellular telephone after the victim's death, and telephone records led to the issuance of a search warrant for Gober's house. After the search team entered the house to execute the warrant, county police lieutenant E. W. Meadows informed Gober that they were looking for a cellular telephone stolen from a murder victim, and informed Gober of his rights pursuant to *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). At some point before or after reading Gober his rights at his home, Lt. Meadows made the statement that "no lawyer can do you any good at this point."

Initially, Gober denied any knowledge of the telephone or the crime. However, after the search team found a fully automatic Mac 11 nine millimeter assault weapon in Gober's bedroom, the same type of weapon used to kill Dixon, Gober told the officers that the telephone

---

[1] The crimes were committed on November 25, 1992. Gober was indicted on June 11, 1993 and tried October 11-13, 1993. The trial court merged the armed robbery conviction and sentenced Gober on October 13 to life in prison for felony murder. Gober filed his notice of appeal November 4, 1993, and the transcript was certified by the court reporter on November 9, 1993. The appeal was docketed in this court on December 17, 1993, and orally argued on March 15, 1994.

they were looking for was outside in the trunk of Gober's car. Gober consented to the officers' search of the car, where they found the victim's telephone. Still denying his own involvement in the murder, however, Gober told police that Shaaggir and Jones had brought the victim's telephone to Gober's house, and Gober led the police to where Jones and Shaaggir lived. When Gober expressed his willingness to give a written statement at police headquarters, he was taken there, was again informed of his rights, and he signed a written waiver of rights form. After initially giving written statements consistent with what he had told the police at his home, Gober admitted to his involvement in the crimes, and signed a written statement to that effect.

(a) Gober now contends that he was placed under arrest when the police officers entered his house to execute the search warrant, and that the arrest was illegal due to a lack of either an arrest warrant or probable cause to arrest. While Gober does not deny that he was informed of his *Miranda* rights at that time, Gober argues that Lt. Meadows' statement regarding the efficacy of counsel constituted "flagrant official misconduct" rendering all statements made following his "illegal arrest" inadmissible as evidence, pursuant to *Olson v. State*, 166 Ga. App. 104, 107 (3) (303 SE2d 309) (1983) (several factors are important in determining whether a statement or confession made subsequent to an illegal arrest is admissible, including the "flagrancy of official misconduct."). We find no merit to this contention because we find that there was no illegal arrest.

The officers entered Gober's home pursuant to a warrant, founded on probable cause, to search the premises for the murder victim's cellular telephone. "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U. S. 692, 705 (101 SC 2587, 69 LE2d 340) (1981); see also OCGA § 17-5-28.

> In the execution of the search warrant, the officer executing the same may reasonably detain or search any person in the place at the time: (1) To protect himself from attack; or (2) To prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant.

Id.

When a gun of the same type as the murder weapon was found in Gober's bedroom, taken in concert with the knowledge that Gober had used the murder victim's telephone after the victim's death, probable cause arose to arrest Gober. Thus, any subsequent detention

was justified by the existence of probable cause to arrest, and, as Gober had been given his *Miranda* warnings and had waived the rights extant in those warnings, the trial court properly held that any voluntary statements thereafter made by Gober were admissible.

(b) Gober also contends that Lt. Meadows' statement constituted coercive interrogation which invalidated Gober's waiver of rights and rendered Gober's subsequent statements involuntary. We disagree.

"The standard for determining the admissibility of confessions is the preponderance of the evidence. To determine whether the state has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal."

(Citations omitted.) *Lee v. State*, 154 Ga. App. 562, 563 (269 SE2d 65) (1980).

Considering the totality of the circumstances, we find that the officer's statement in this case constituted an expression of the officer's opinion, and did not render Gober's statements involuntary. The officer's comment promised no lighter punishment or other benefit to Gober if he declined to invoke his right to counsel, see *Caffo v. State*, 247 Ga. 751, 757 (279 SE2d 678) (1981); OCGA § 24-3-50, was not a threat, and was not otherwise reasonably likely to induce a fear of injury if Gober invoked his right to counsel, see § 24-3-50. Indeed, when Gober made no indication that he wanted to call a lawyer, the police specifically asked if he would like to call his parents, and he declined.

The circumstances of the investigation and arrest in this case reveal none of the extreme tactics identified as the hallmarks of coercive police activity offensive to fundamental notions of due process,

*Metheny v. State*, 197 Ga. App. 882, 886 (400 SE2d 25) (1990), such as lengthy interrogation, physical deprivation, brutality, or deception. Gober was in his own home, he had been in the company of the police for only a short time when the officer made his statement, Gober was not a minor, he knew what the police were searching for and in what connection, and he had been informed of and had waived his *Miranda* rights. Accordingly, we find that the trial court did not err in finding that the statements Gober made after probable cause to arrest arose were voluntary and admissible.

3. The trial court did not err in redacting the inculpatory references to co-defendant Shaaggir, who was tried jointly but did not tes-

tify, from Gober's written statement when the statement was read into evidence. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Unlike the case of *Reeves v. State*, 168 Ga. App. 737 (310 SE2d 285) (1983), where the trial court excluded an entire exculpatory sentence from the defendant's otherwise inculpatory statement, the exclusion of Shaaggir's name only did not improperly prejudice Gober.

4. In his initial instructions, the court properly charged the jury with the requirements for conviction as a party to a crime. Subsequently, the appellant requested that the trial court also charge the following language: "[a]pproval of the crime not amounting to encouragement is not sufficient to show that a defendant is a party to the crime." In recharging the jury, however, the trial court stated that "[a]pproval of the crime not amounting to encouragement is not sufficient to show that a defendant is a *matter* to the crime." As the jury was properly instructed on party to a crime in the initial charge and the trial court's misstatement was not substantive, we find that " '[n]o juror could have been misled or confused and no prejudice could flow from this palpable "slip of the tongue." ' *Gossett v. State*, 142 Ga. App. 815 (2) (237 SE2d 220) (1977)." *Gober v. State*, 247 Ga. 652, 656 (278 SE2d 386) (1981).

5. Over the appellant's objection, a police officer testified that when he saw the address on the search warrant he recognized it as belonging to Gober, and that he recognized Gober when he arrived at Gober's home. Contrary to the appellant's assertion, however, this testimony did not improperly place the appellant's character in evidence. See *Bradford v. State*, 182 Ga. App. 337, 339 (355 SE2d 735) (1987) ("The fact that a defendant is known to the police does not put his character in issue."); *Johnson v. State*, 164 Ga. App. 501, 504 (297 SE2d 38) (1982) (Testimony that police had previously been to defendant's house before did not put defendant's character in issue.).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 31, 1994.

*L. David Wolfe, Brian E. Steel,* for appellant.

*Lewis R. Slaton, District Attorney, Rebecca A. Keel, Carole E. Wall, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Marla-Deen Brooks, Assistant Attorney General,* for appellee.