S96A1340. BERRY v. THE STATE.
S96A1343. MONROE v. THE STATE.
(481 SE2d 203)

HINES, Justice.

Co-defendants Dedrick Berry and Terrell Monroe, along with three others, were charged with malice murder, felony murder while in the commission of armed robbery, and armed robbery in connection with the fatal shooting of store owner John C. Dixon. A jury found Berry and Monroe guilty of Dixon's felony murder and armed robbery and each was sentenced to life in prison.[1] We affirm the con-

---

[1] The crimes were committed on January 16, 1995. On March 27, 1995, Dedrick Berry and Terrell Monroe, along with Delwin Berry, Tierrace Moore, and Kiendel Tootle, were indicted for malice murder, felony murder during the commission of armed robbery, and armed robbery. Dedrick Berry, Monroe, and Moore were tried jointly before a jury on September 11-19, 1995. Moore was found guilty only of the armed robbery. Berry and Monroe were acquitted of malice murder, but found guilty of felony murder and armed robbery. On October 5, 1995, Berry and Monroe were each sentenced to life imprisonment for the felony murder. The convictions for armed robbery merged as a matter of law. Berry's and Monroe's motions for new trial, as amended, were denied on March 29, 1996. Berry filed a notice of appeal on April 4, 1996. Monroe filed a notice of appeal on April 11, 1996. Both appeals were docketed in this Court on May 13, 1996, and were submitted for decision without oral argument on July 8, 1996.

victions of both men.

1. Berry and Monroe contend entitlement to directed verdicts of acquittal. Each claims that there was no credible evidence that he had knowledge that an armed robbery would occur, and urges that his presence at the scene of the crimes is insufficient to convict. Witness credibility was a matter to be determined by the jury,[2] and the evidence viewed in favor of the verdicts shows far more than the mere presence of both men.

The State presented evidence, including the inculpatory statements of the defendants, that prior to the crimes Berry had "cased out" the Dixons' store and believed it would be easy to rob because there were no cameras and few people. During the morning of January 16, 1995, Berry, Monroe, Tierrace Moore, Kiendel Tootle, and Delwin Berry drove around together for 45 minutes to an hour. The men were armed with a shotgun and discussed committing robbery at the store. Shortly thereafter, they arrived at the store and all went inside except for Moore. Everyone knew that the plan was to commit armed robbery. Berry nodded to Tootle to go ahead with the robbery, and Tootle pulled out the shotgun and told Dixon to "give it up." Dixon tried to run and Tootle shot him in the back of the neck. Berry, Monroe and Tootle rushed for the cash register. Dixon bled to death from the gunshot wound.

Berry and Monroe were not entitled to directed verdicts of acquittal as the evidence was sufficient to enable a rational trier of fact to find both men guilty beyond a reasonable doubt of felony murder while in the commission of armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Berry and Monroe contend that the trial court erred in refusing to grant their motions for a change of venue. They urge that public outcry and publicity surrounding the case in the context of the "relatively small" community of Vidalia and Toombs County precluded their receiving a fair trial. On the contrary, the evidence supports the trial court's determination that defendants would be able to get a fair trial.

> The inquiry into a request for a change of venue is two pronged. First, the court must consider whether the atmosphere in the community is so inherently prejudicial due to pretrial publicity that the defendant cannot receive a fair trial in the community. Secondly, the court must consider whether the defendant cannot receive a fair trial due to the prejudice of individual jurors. [Cits.] . . . Situations which

---

[2] OCGA § 24-9-80.

are made inherently prejudicial by pretrial publicity are extremely rare. [Cits.]

*Lemley v. State,* 258 Ga. 554, 555 (4) (372 SE2d 421) (1988).

Berry and Monroe failed to show that the pretrial publicity, which largely occurred right after the murder, resulted in that rare situation of inherent prejudice so as to warrant a change of venue. As to the second part of the inquiry, Berry and Monroe were likewise unable to demonstrate that they could not receive a fair trial due to the prejudice of individual jurors. The record indicates that only one of fifty-one individuals was excused for cause, and that of the remaining members of the venire that indicated they had heard something about the case, few had any opinion or impression about it and all affirmed the ability to be fair and impartial and to render a decision based on the evidence at trial.

3. On September 13, 1995, Berry filed a motion to recuse the trial judge based on the allegations that the judge had manifested personal bias or prejudice against him as evidenced by a September 5, 1995, telephone conversation regarding the plea bargaining of co-defendant Tootle and a courtroom exchange during voir dire in which the judge "dressed down" Berry's counsel. Appended to the motion was an affidavit by Tootle's counsel regarding the alleged plea bargain conversation.[3] There was no supporting affidavit regarding the cited exchange during voir dire. The trial judge denied the motion after concluding that it was untimely and on the merits insufficient for recusal. Berry contends that the judge erred in failing to hold a hearing in the matter and in failing to recuse himself. Berry's complaints are unavailing.

Pretermitting the question of the timeliness of the motion,[4] in substance it failed. After being presented with a motion for recusal under USCR 25.1, the trial judge has the duty to determine whether, assuming the truth of the facts alleged, a reasonable person might conclude that the judge harbors bias, stemming from an extrajudicial source, which is of a nature and intensity as would interfere with the exercise of impartial judgment. *Wellons v. State,* 266 Ga. 77, 88 (18) (463 SE2d 868) (1995). If the affidavit is found to be sufficient, then the matter is referred to another judge for a hearing. See USCR 25.3; *State v. Fleming,* 245 Ga. 700 (267 SE2d 207) (1980). Here, the trial judge properly considered the legal sufficiency of the facts set forth in

---

[3] The affidavit stated: "I had a telephone conversation with [the trial judge] and [the District Attorney] regarding plea bargaining of Kiendall Tootle on September 5, 1995. During said conversation [the trial judge] stated that if my client, Kiendall Tootle, desired to plea straight up he could 'help himself' by turning on the others.'"

[4] See Uniform Superior Court Rule 25.1.

the affidavit and correctly determined that even accepted as true, they did not support a charge of his bias sufficient to warrant recusal. Nor was there any showing that any opinion of the judge about Berry stemmed from anything other than the judge's participation in the trial proceedings. See *Birt v. State*, 256 Ga. 483, 485 (4) (350 SE2d 241) (1986); *Jones v. State*, 247 Ga. 268, 271 (4) (275 SE2d 67) (1981).

4. It was not error to deny Berry's challenge to the array of the traverse jury based on the claim of deficient racial composition in regard to African Americans. The record discloses that Berry completely failed to establish a prima facie case of jury discrimination. See *Bowen v. State*, 244 Ga. 495, 500 (4) (260 SE2d 855) (1979).[5] Based upon figures from the voter registration office, Berry asserted that the African American population of Toombs County was 23.4 percent. Thus, he maintained that the absolute disparity[6] between the jury box and the number of African American jurors in the county was 5.6 percent. However, at the hearing in the matter, there was evidence that the jury pool was selected from the population at large in addition to the voter registration lists and that with African Americans comprising 20.6 percent of the population of Toombs County, the result was an absolute disparity of 2.1 percent. Such a disparity is insufficient to support an inference of purposeful discrimination. *Cook v. State*, 255 Ga. 565, 573 (11) (340 SE2d 843) (1986).

5. The trial court did not err in denying Berry's challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The opponent of a strike has the burden to make out a prima facie case of purposeful discrimination by demonstrating that the totality of the relevant facts gave rise to an inference of discriminatory purpose. Once a prima facie case is established, the proponent of the strike must articulate a race-neutral explanation for striking the jurors at issue. The explanation need not be persuasive or even plausible, but only one that does not deny equal protection. However, the ultimate burden of persuasion about the racial motivation rests with and never leaves the opponent of the strike. *Whatley v. State*, 266 Ga. 568, 569 (3) (468 SE2d 751) (1996); *Jackson v. State*, 265 Ga. 897, 898 (2) (463 SE2d 699) (1995), citing *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834), rehearing denied, ___ U. S. ___ (115 SC

---

[5] A prima facie case requires that the defendant show that a distinctive group or recognizable class in the community has been excluded from the jury list. Second, he must demonstrate that an opportunity for discrimination against this group existed from the source of the jury list. Lastly, it must be shown that the use of the infected source produced a significant disparity between the percentages found present in the source and those actually appearing on the jury panels.

[6] Berry argues "absolute" rather than "comparative" disparity. See *Cook v. State*, 255 Ga. 565, 570 (11) (340 SE2d 843) (1986).

2635, 132 LE2d 874) (1995). Here, the burden was not met. The trial court made no express ruling on whether or not Berry had established a prima facie case. Instead, it directly asked the State about its peremptory challenges to three African Americans. The State explained that it struck the first prospective juror because he had recently been the subject of investigation by the District Attorney's Office and probably harbored ill-feeling toward the prosecutor, and that it challenged the others because they were represented in other litigation by defense counsel. Such reasons were correctly found to be legitimate, neutral and non-racial, and in the absence of any further showing by Berry, fatal to his *Batson* claim. See *Davis v. State*, 263 Ga. 5, 7 (10) (426 SE2d 844) (1993).

6. The trial court did not err in refusing to excuse a venireman for cause and in its questioning of the man. The venireman initially indicated that he knew the victim's family and had spoken with the victim's brother and that it would be difficult for him to put aside what he had learned from the brother. However, in order to disqualify a prospective juror on the basis that he has formed an opinion about the guilt or innocence of the defendant, when the prospective juror had formed the opinion based on hearsay rather than his having witnessed the crime or having heard testimony under oath, the opinion must be so fixed and definite that it would not be changed by the evidence or the charge of the court during the trial of the case. *Waters v. State*, 248 Ga. 355, 362 (2) (283 SE2d 238) (1981). Therefore, the trial court properly continued to question the prospective juror to determine the strength of his opinion. The fact that in so doing, the court used a football analogy to explain about having a fixed opinion did not render the court's inquiry inappropriate. In fact, the court obviously made the prospective juror understand the crux of the question, that is, whether or not he could lay aside any preconceptions and base an opinion solely on the evidence. The prospective juror testified that he could put aside any prior impressions and fairly and impartially decide the case on the evidence presented at trial. Thus, he was not subject to a successful challenge for cause. See *Bright v. State*, 265 Ga. 265, 281 (8) (455 SE2d 37) (1995).

7. Berry contends that the trial court erred in allowing into evidence his inculpatory statement and those of the co-defendants because he asserts that all the statements were involuntarily made. Berry has no standing to assert and rely on his co-defendants' rights to challenge the voluntariness of their statements. *Rogers v. State*, 211 Ga. App. 67 (1) (438 SE2d 140) (1993). The challenge fails as well in regard to his own statement.

Berry claims that his statement was rendered involuntary because the interrogating officer told him that everyone else was blaming him for the incident and that this amounted to the promise

of a lighter sentence. Accepting arguendo that such a statement was made, it did not constitute a coercive interrogation so as to affect the voluntariness of the statement, nor did it in any manner raise the hope of a lighter sentence. See *Gober v. State*, 264 Ga. 226 (2) (443 SE2d 616) (1994). The evidence at the *Jackson-Denno*[7] hearing showed that Berry was advised of his *Miranda*[8] rights and waived them voluntarily. The officer who conducted the interrogation testified that no promises were made to Berry, and he was not threatened in any way. Unless clearly erroneous, a trial court's findings about factual determinations and credibility relating to the admissibility of an inculpatory statement will be upheld on appeal. *Gober*, supra at 228 (2). Berry has failed to establish that the trial court's ruling in favor of the free and voluntary nature of his statement was in error; therefore, the court's decision is upheld. *Watkins v. State*, 264 Ga. 657, 660 (2) (449 SE2d 834) (1994).

8. Monroe likewise fails in his challenge to the admission of his inculpatory statement. Whether or not a statement by a juvenile is admissible depends upon whether there was a knowing and intelligent waiver of constitutional rights, considered under the totality of the circumstances. The State has the burden of demonstrating that the juvenile understood and waived these rights. The analysis involves the application of the nine-part test outlined in *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976).[9] *McKoon v. State*, 266 Ga. 149, 150 (2) (465 SE2d 272) (1996). Here, the record clearly shows that after hearing the evidence at the *Jackson-Denno* hearing, the court applied the *Riley* analysis and concluded that Monroe's statement was admissible into evidence for consideration by the jury.[10] The fact that Monroe had not been in contact with his parents for 11 hours or that a parent was not present during the questioning were certainly factors for the trial court to consider, but were not, in and of themselves, determinative of admissibility of the statement.

---

[7] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[8] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[9] The court is to consider the accused's age; the accused's education; his knowledge of the substance of the charge and the nature of his rights to consult with an attorney; whether or not the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges were filed; the interrogation methods; the length of the interrogation; whether the accused refused to voluntarily give statements on prior occasions; and whether the accused repudiated an extrajudicial statement at a later date.

[10] This was based on evidence that Monroe was 16 years old, in the tenth grade, and able to read and write. The interrogating officer explained who she was, stated that no threats or promises were made to Monroe, and that she twice advised Monroe of his *Miranda* rights because he was a juvenile. Monroe stated he understood his rights and executed a waiver. He never asked for an attorney or that the questioning cease. Nor did he request that any relative be present. He executed his own handwritten statement.

*McKoon*, supra at 151 (2). These factors, along with the timing of the questioning and Monroe's knowledge of the charges, had to be considered in the context of the whole, as the court did. The evidence in its entirety supports the determination that Monroe knowingly and intelligently waived his constitutional rights. Thus, there was no error in the court ruling in favor of admissibility. *Yorker v. State*, 266 Ga. 615, 617 (4) (469 SE2d 158) (1996).

9. Berry and Monroe challenge the trial court's refusal to sever their trials. Berry contends that severance was required because the number of defendants and the similarity of their names created confusion for the jury as reflected by the jury foreman's statements in regard to Berry's motion for new trial. Also, he asserts that several instances arose where evidence was admitted that was inculpatory to one defendant and exculpatory to another, and that he was prejudiced by his inability to cross-examine Monroe regarding Monroe's inculpatory post-arrest statement. Monroe urges that trying the defendants together allowed the State to portray the incident as a "gang" act, making it easy for the jury to conclude that all of the defendants were guilty of the crime.

In a case in which the death penalty is not sought, the matter of severance is within the trial court's discretion which will not be disturbed unless that discretion is abused. OCGA § 17-8-4. A defendant desiring severance has the burden of demonstrating more than the possibility that a separate trial would provide him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process in the absence of severance. *Dennard v. State*, 263 Ga. 453, 455 (5) (435 SE2d 26) (1993). Berry and Monroe fail to do this.

The facts of this case were not complex, the number of defendants so large, or any similarity of name so great so as to inherently cause confusion for the jury. Nor have defendants shown that the jury was confused by the jury foreman's testimony at the motion for new trial hearing. On the contrary, the foreman's statements showed that the jury was well able to distinguish and assess the culpability of each of the defendants. There is also no merit to the claim that trying the defendants together allowed the State to misrepresent the incident as the act of a "gang." Indeed, the circumstances of this case make it difficult to foresee how the presentation of evidence against Berry and Monroe would have significantly differed in separate prosecutions. See *Smith v. State*, 267 Ga. 372 (477 SE2d 827) (1996.)

Berry's cited instances of alleged prejudice due to the admission of evidence are likewise unavailing. Moore testified and was available for cross-examination, and his inculpatory statement mirrored Berry's. Berry cannot show prejudice from Monroe's statement either for it too echoed the version of events related by Berry and the

others. The fact that Monroe did not take the stand, and thus, afford Berry the opportunity for cross-examination did not render Monroe's statement inadmissible in the joint trial. The interlocking confession or incriminating statement of a co-defendant can be admitted against a defendant who has also confessed when the court gives appropriate limiting instructions, as the court did in this case. *Freeman v. State*, 265 Ga. 709, 710 (1) (462 SE2d 139) (1995).[11]

10. It was not error for the trial court to allow the State to admit into evidence a pre-autopsy photograph of the victim (State's Exhibit #19) and a videotape (no audio) of the crime scene (State's Exhibit # 23). Pre-autopsy photographs are generally admissible to show the nature and extent of the victim's wounds. *Williams v. State*, 265 Ga. 681, 683 (5) (461 SE2d 530) (1995). See also *Johnson v. State*, 266 Ga. 775, 778 (8) (470 SE2d 637) (1996). Moreover, State's Exhibit #19 was the only still photograph of the victim which was put into evidence. As to the videotape, it too was probative on the relevant issues, and its gruesome or inflammatory nature stemmed entirely from acts of the defendants and not from alteration or autopsy by the State. *Bullard v. State*, 263 Ga. 682, 686 (5) (436 SE2d 647) (1993).

11. Berry's complaints about the trial court recharging the jury on parties to a crime are barred. He made no objection at trial to the initial instruction or to the recharges, nor did he reserve the right to do so later. *Russell v. State*, 264 Ga. 121, 122 (3) (441 SE2d 750) (1994). What is more, Berry agreed with the court about the need for such reinstruction in response to questions from the jury.

12. Berry fails in his claim that the jury foreman was guilty of misconduct because he used his knowledge as a lawyer in deciding Berry's guilt. There has been no showing of irregularity in the conduct of the juror. On the contrary, at the motion for new trial hearing, the foreman testified unequivocally that he based his decision solely on the law as the court charged it to the jury. Moreover, any discussion among the jurors about culpability as an "accessory after the fact" was not in regard to Berry's role in the crimes.

13. The trial court properly denied Berry's motion for new trial based on the contentions of error, which are found to be without merit.

*Judgments affirmed. All the Justices concur.*

---

[11] Berry does not contend that the admission of the inculpatory statements of his co-defendants constituted a violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

DECIDED FEBRUARY 17, 1997 —
RECONSIDERATION DENIED MARCH 13, 1997.

*Salter & Shook, Mitchell M. Shook,* for appellant (case no. S96A1340).

*Thomas J. O'Donnell, Jr.,* for appellant (case no. S96A1343).

*Richard A. Malone, District Attorney, Michael J. Bowers, Attorney General, Beth Attaway, Assistant Attorney General,* for appellee.