## S98P1498. LEE v. THE STATE.
### (514 SE2d 1)

CARLEY, Justice.

A jury found James Allyson Lee guilty of malice murder, felony murder, armed robbery, and possession of a firearm during the commission of a crime. For the murder, the jury recommended a death sentence, finding the following aggravating circumstances: that Lee had committed the murder while engaged in the commission of armed robbery and kidnapping with bodily injury; that Lee had committed the murder for himself or another for the purpose of receiving money or any other thing of monetary value; and that the offense of murder was outrageously or wantonly vile, horrible or inhuman, in that it involved an aggravated battery to the victim before death. OCGA § 17-10-30 (b) (2), (4), (7). Lee's motion for new trial was

---

denied and he appeals.[1]

### *The Guilt-Innocence Phase of Trial*

1. The evidence presented at trial authorized the jury to find the following: Lee and an accomplice broke into a gun store on May 25, 1994, and stole several guns, including a ten millimeter Glock pistol. Afterwards, Lee and his girl friend decided to drive to Pierce County to kill Lee's father and steal his father's Chevrolet Silverado pickup truck. When Lee learned that his father was not home, he decided to kill his father's live-in girl friend, Sharon Chancey. In the early morning hours of May 26, 1994, Lee's girl friend lured the victim from the house by claiming that her Toyota had broken down nearby. When Ms. Chancey pulled up to the Toyota in the Silverado and got out, Lee shot her in the face and threw her in the back of the pickup. Lee then drove the truck to a secluded area in Charlton County. After dragging Ms. Chancey into the woods, Lee reached down to strip two rings from her. She was still alive, and grabbed his arm. Lee responded by shooting her two more times and killing her.

After swapping the Silverado and Toyota license plates, Lee and his girl friend drove to Florida in the pickup truck. While in Florida, Lee made several incriminating remarks to friends and his girl friend's sister. At about 11:30 p.m. on May 26, 1994, Lee was stopped for a broken taillight and, after a check revealed that the Silverado was stolen, he was arrested. The ten millimeter Glock pistol was recovered from the Silverado, and this gun was determined by a firearms expert to be the murder weapon. The police also found Ms. Chancey's purse and identification in the Silverado. Lee gave several incriminating statements to various law enforcement officials in Florida and Georgia, including a videotaped confession at the crime scenes in Charlton and Pierce counties.

The evidence was sufficient to enable a rational trier of fact to find proof of Lee's guilt of malice murder, felony murder, armed rob-

---

[1] The crimes occurred on May 26, 1994, and the Charlton County grand jury indicted Lee on September 2, 1994, for malice murder, felony murder, kidnapping with bodily injury, armed robbery, theft by taking, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The State filed its notice of intent to seek the death penalty on November 2, 1994. The trial was held May 28-June 6, 1997. At trial, the trial court directed verdicts of acquittal for kidnapping with bodily injury and theft by taking, and the State nol prossed the charge of possession of a firearm by a convicted felon. Lee was convicted of the remaining counts and, in addition to the death sentence for malice murder, the trial court imposed a life sentence for armed robbery and a consecutive five-year sentence for possession of a firearm during the commission of a felony. The felony murder conviction was vacated by operation of law, *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Lee filed a motion for new trial on July 3, 1997, amended on February 19, 1998, which was denied on April 15, 1998. Lee filed his notice of appeal on May 14, 1998, and the case was orally argued on September 15, 1998.

bery, and possession of a firearm during the commission of a felony beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence was also sufficient to authorize the jury to find beyond a reasonable doubt the four statutory aggravating circumstances which supported his death sentence for the murder. *Jackson v. Virginia*, supra; OCGA § 17-10-35 (c) (2).

2. Lee complains that the incriminating statements he made to the police on May 26-27, 1994, were not voluntary. OCGA § 24-3-50.

> " 'The standard for determining the admissibility of confessions is the preponderance of evidence. To determine whether the state has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal.' " [Cit.]

*Gober v. State*, 264 Ga. 226, 228 (2) (b) (443 SE2d 616) (1994). Lee was 19 years old, in police custody only a short time, not under the influence of drugs or alcohol, not subjected to any physical or psychological coercion, and he was informed of and waived his *Miranda* rights on several occasions. After Lee admitted to killing his father's girl friend and stealing the truck, a police officer asked him if he would make another statement on audiotape. Lee agreed, but when the recording began Lee asked the officer, "What should I do? Should I talk?" The officer replied, "That's up to you, man. All you're going to do is help yourself out." Contrary to Lee's assertion, the officer's comment was not a "hope of benefit" that would render Lee's statement involuntary under OCGA § 24-3-50. See *Gilliam v. State*, 268 Ga. 690, 692 (3) (492 SE2d 185) (1997) (encouraging a suspect to tell the truth is not a "hope of benefit" under OCGA § 24-3-50); *Gober*, supra at 228 (2) (b); *Caffo v. State*, 247 Ga. 751, 756-757 (3) (279 SE2d 678) (1981) (telling a suspect he would "feel better" if he confessed is not a "hope of benefit" under OCGA § 24-3-50). Considering the totality of the circumstances, we conclude that the trial court correctly found that Lee's incriminating statements on May 26-27, 1994, were voluntary and admissible. *Gilliam*, supra at 692-693 (3); *Gober*, supra.

3. Lee's contentions that the State failed to prove the identity of the victim or that Charlton County was the proper venue for the murder conviction are without merit. Viewed in the light most favorable to the prosecution, the evidence was clearly sufficient to support a jury finding beyond a reasonable doubt that Sharon Chancey was the murder victim, and that Ms. Chancey was still alive in Charlton County when she was fatally shot two more times. *Jackson*

*v. Virginia,* supra.

4. After the State rested its case in the guilt-innocence phase, the trial court directed a verdict of acquittal on the charge of kidnapping with bodily injury because the evidence showed that the inception of the kidnapping was in Pierce County. *Potts v. State,* 261 Ga. 716, 720 (2) (410 SE2d 89) (1991) (venue for kidnapping with bodily injury lies within the county where the victim is seized); *Krist v. State,* 227 Ga. 85, 91 (4) (179 SE2d 56) (1970). The trial court, however, refused to direct a verdict of acquittal on the charge of felony murder even though the felony murder indictment specifies that kidnapping with bodily injury is the underlying felony. Lee asserts that this denial was error.

A person commits the offense of felony murder "when, in the commission of a felony, he causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). "A murder may be committed in the commission of a felony, 'although it does not take place until after the felony itself has been technically completed, if the homicide is committed within the res gestae of the felony.' " *Diamond v. State,* 267 Ga. 249, 250 (2) (477 SE2d 562) (1996). We conclude that Lee's murder of Ms. Chancey was within the res gestae of the kidnapping with bodily injury, since Ms. Chancey was under the continuous control of the defendant until she was killed. To hold otherwise would lead to the absurdity that a defendant who commits kidnapping with bodily injury in one county, and abducts the victim to a second county where he kills her without malice aforethought, could not be charged with felony murder in either county. See OCGA § 17-2-2 (c) (venue for homicide lies in county where cause of death is inflicted); *Potts,* supra. The trial court did not err in denying Lee's motion for a directed verdict of acquittal of felony murder. In addition, Lee can show no harm resulting from the denial of this motion. "[S]ince the jury returned a verdict specifying that it found the defendant guilty of 'malice murder,' any issue of felony murder is moot." *Holiday v. State,* 258 Ga. 393, 398 (12) (369 SE2d 241) (1988).

5. The evidence was sufficient to support Lee's conviction for armed robbery, despite Lee's contention that he did not take the victim's rings until after she was dead. *Jackson v. Virginia,* supra. It is well-settled that a defendant commits a robbery if he kills the victim first and then takes the victim's property. *Francis v. State,* 266 Ga. 69, 70-71 (1) (463 SE2d 859) (1995); *Crowe v. State,* 265 Ga. 582, 594 (21) (458 SE2d 799) (1995); *Prince v. State,* 257 Ga. 84, 85-86 (1) (355 SE2d 424) (1987). Moreover, as pointed out in Division 3, the evidence was sufficient to authorize the jury to find that Ms. Chancey was alive when the robbery took place.

6. Lee requested a charge in the guilt-innocence phase that a corpse is not a person. See *Lawson v. State,* 68 Ga. App. 830 (24 SE2d

326) (1943), overruled by *McKee v. State*, 73 Ga. App. 815 (38 SE2d 184) (1946). Lee wanted this instruction in order to support his contention that, if Ms. Chancey was dead when her rings were removed, there was no taking from a person, and therefore no armed robbery. Since this charge is not an accurate statement of the law, the trial court correctly declined to give it. *Francis*, supra at 70-71 (1); *Crowe*, supra at 594 (21).

## The Sentencing Phase of Trial

7. While awaiting trial, Lee escaped from jail on July 25, 1995. He stole a Lincoln Town Car and drove to Florida, picking up a hitchhiker on the way. At about 5:00 a.m. on July 26, Boynton Beach Police Officer Jerry Rodriguez, a 17-year police veteran, was on routine patrol when he observed the Lincoln exiting a gravel road that led to a marina and business center. No businesses were open at that time of day in the area from which Lee was emerging and there were no residences in the vicinity. Because the vehicle was coming out of an area "where no one should be" and because he believed there had been previous burglaries in the area, Officer Rodriguez pulled behind Lee's vehicle and attempted to make an investigatory stop. However, when Officer Rodriguez turned on his emergency lights, the Lincoln "jumped and accelerated." After a pursuit of about 800 yards, the Lincoln came to a stop and Lee and the hitchhiker bailed out and fled on foot. Officer Rodriguez pursued Lee, who eventually fell to the ground. The officer approached Lee and asked, "Where is the other guy?" Lee responded, "I don't know who he is, but I'll tell you who I am; I'm wanted for murder in Georgia, my name is James Lee." Lee was arrested and subsequently gave a statement that was used by the State as non-statutory aggravating evidence in the sentencing phase. Lee asserts that the statement should have been suppressed as the fruit of an illegal investigatory stop, because Officer Rodriguez, based upon the totality of the circumstances, did not have a particularized and objective basis for suspecting that Lee was engaged in criminal activity. *United States v. Cortez*, 449 U. S. 411, 417-418 (II) (A) (101 SC 690, 66 LE2d 621) (1981); *Terry v. Ohio*, 392 U. S. 1, 21 (III) (88 SC 1868, 20 LE2d 889) (1968); *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994).

The evidence regarding this incident is uncontroverted and there is no question regarding the credibility of the witnesses. Therefore, "the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant*, supra at 320 (1). We conclude that the trial court properly denied Lee's motion to suppress. Officer Rodriguez is an experienced police officer. At 5:00 a.m., he observed a vehicle exiting a business area where no residences were located, at a

time when no businesses were open and where he believed there had been previous burglaries. In response to the officer's emergency lights, the vehicle's occupants attempted to flee. "Flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search ([cit.]); certainly these circumstances gave rise to an articulable suspicion that a criminal act may have been occurring so as to authorize a brief investigatory stop." *State v. Smalls*, 203 Ga. App. 283, 286 (2) (416 SE2d 531) (1992). See also *United States v. Briggman*, 931 F2d 705, 708-709 (11th Cir. 1991) (investigatory stop proper when experienced police officer observed suspect parked in a parking lot in a high crime area at 4:00 a.m., when all the nearby commercial establishments were closed, and the suspect drove away from the officer in an evasive manner). Taken together, these facts are sufficient to establish at least an articulable suspicion that Lee was engaged in criminal behavior and that Officer Rodriguez was therefore justified in conducting an investigatory stop. See *Cortez*, supra; *Terry*, supra; *Vansant*, supra at 320 (2). The trial court did not err in allowing the admission of Lee's subsequent statement.

8. Even though the trial court directed a verdict of acquittal of kidnapping with bodily injury, the jury was authorized to find the statutory aggravating circumstance that the murder was committed while Lee was engaged in the commission of kidnapping with bodily injury. OCGA § 17-10-30 (b) (2). The offense of kidnapping with bodily injury was sufficiently part of the same criminal transaction to be considered as and found to be a (b) (2) aggravating circumstance of the murder. See *Potts*, supra at 720 (3); *Horton v. State*, 249 Ga. 871, 878-879 (11) (295 SE2d 281) (1982).

9. The evidence was sufficient to support the OCGA § 17-10-30 (b) (7) aggravating circumstance that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved an aggravated battery to the victim. OCGA § 17-10-35 (c) (2); *Jackson v. Virginia*, supra. Insofar as aggravated battery under the (b) (7) aggravating circumstance is concerned, only facts showing that the aggravated battery occurred before death, and was separate from the act causing instantaneous death, will support a finding of aggravated battery. *Davis v. State*, 255 Ga. 588, 594 (3) (c) (340 SE2d 862) (1986); *Hance v. State*, 245 Ga. 856, 861-862 (3) (268 SE2d 339) (1980). Viewed in the light most favorable to the prosecution, the evidence shows that Lee shot the victim in the face and threw her in the back of the pickup truck, where she lingered for about an hour until he killed her in Charlton County. The jury was authorized to find the existence of the (b) (7) aggravating circumstance.

10. The death sentence in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA

§ 17-10-35 (c) (1). Also, the death sentence is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crimes and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of the death penalty in this case, as all involve an aggravated battery under the (b) (7) aggravating circumstance, or a deliberate killing during the commission of kidnapping with bodily injury or armed robbery.

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Mize v. State*, 269 Ga. 646 (501 SE2d 219) (1998); *Bishop v. State*, 268 Ga. 286 (486 SE2d 887) (1997); *Jones v. State*, 267 Ga. 592 (481 SE2d 821) (1997); *Carr v. State*, 267 Ga. 547 (480 SE2d 583) (1997); *McClain v. State*, 267 Ga. 378 (477 SE2d 814) (1996); *Greene v. State*, 266 Ga. 439 (469 SE2d 129) (1996); *Crowe v. State*, 265 Ga. 582 (458 SE2d 799) (1995); *Mobley v. State*, 265 Ga. 292 (455 SE2d 61) (1995); *Christenson v. State*, 262 Ga. 638 (423 SE2d 252) (1992); *Ward v. State*, 262 Ga. 293 (417 SE2d 130) (1992); *Meders v. State*, 261 Ga. 806 (411 SE2d 491) (1992); *Todd v. State*, 261 Ga. 766 (410 SE2d 725) (1991); *Potts v. State*, 261 Ga. 716 (410 SE2d 89) (1991); *Miller v. State*, 259 Ga. 296 (380 SE2d 690) (1989); *Moon v. State*, 258 Ga. 748 (375 SE2d 442) (1988); *Holiday v. State*, 258 Ga. 393 (369 SE2d 241) (1988); *Newland v. State*, 258 Ga. 172 (366 SE2d 689) (1988); *Jefferson v. State*, 256 Ga. 821 (353 SE2d 468) (1987); *Hance v. State*, 254 Ga. 575 (332 SE2d 287) (1985).

DECIDED MARCH 1, 1999 —
RECONSIDERATION DENIED APRIL 2, 1999.

*Adams & Brooks, John B. Adams, James K. Brooks,* for appellant.

*Richard E. Currie, District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Christopher L. Phillips, Assistant Attorney General,* for appellee.