## S97A1125. GILLIAM v. THE STATE.
### (492 SE2d 185)

HINES, Justice.
Aron Gilliam appeals his conviction for the felony murder of high school student Jason Kelly. He challenges the refusal to change venue, the admission of his inculpatory statement, and the trial court's instruction to the jury. For the reasons which follow, we affirm Gilliam's conviction.[1]

---

[1] The beating and shooting of Jason Kelly occurred on December 8, 1993. On December 23, 1993, the Juvenile Court of Chatham County found Gilliam to be delinquent for his commission of the offenses of aggravated assault, aggravated battery, possession of a firearm during the commission of a crime, possession of a firearm on school property, carrying a pistol without a license, and carrying a concealed weapon, all stemming from the incident. See OCGA § 15-11-37. Kelly died on January 4, 1994, and on March 9, 1994, Gilliam's prosecution for Kelly's murder was transferred to the Superior Court of Chatham County. On October 12, 1994, a Chatham County grand jury indicted Gilliam for malice murder and felony murder while in the commission of aggravated assault. Gilliam was tried before a jury on

Kelly was walking to high school with two friends. Gilliam and a group of young men were standing in front of a convenience store across from the school. As Kelly and one of his friends neared the school, they were approached by Gilliam and the others. Kelly and the friend ran in separate directions with the group of boys giving chase. The friend was able to run to the safety of the school, but Kelly slipped and was thrown to the ground. Gilliam and his cohorts surrounded Kelly and began to kick and beat him. During the attack, Gilliam drew a handgun and shot Kelly in the abdomen.

The assailants fled to a "clubhouse," where Gilliam reloaded his gun and talked about shooting Kelly. The group left and was later intercepted by police. During a pat-down search, Gilliam attempted to remove a brass round or shell from his pocket and kick it under a car. A member of the group told police where Gilliam had discarded the gun and bullets, and they were found in some bushes. The bullet removed from Kelly was positively identified as having been fired from the recovered weapon. Gilliam gave a statement to police in which he admitted shooting Kelly.

Fifteen days after the incident, the sixteen-year-old Gilliam was adjudicated delinquent in juvenile court for Kelly's aggravated assault and aggravated battery as well as several related weapons charges. Kelly died as the result of his gunshot wound 12 days after the juvenile court proceeding, and Gilliam was then prosecuted in superior court for his murder. At trial, Gilliam testified that he shot Kelly because of an earlier altercation, but that he had intended only to hurt him and had aimed for his leg.

1. The evidence was sufficient to find Gilliam guilty beyond a reasonable doubt of felony murder while in the commission of aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Gilliam fails in his claim that the trial court erred in denying him a change of venue. Gilliam concedes that after voir dire it was plain that few jurors remembered his case. Moreover, he has made no showing that because of any publicity in his case or in another school shooting which had gained media attention there was inherent prejudice so that Gilliam could not receive a fair trial in the community, or that a fair trial would be denied him because of individual juror bias. *Lemley v. State*, 258 Ga. 554, 555 (4) (372 SE2d 421) (1988).

May 28-30, 1996, which acquitted him of malice murder but found him guilty of felony murder. On June 5, 1996, Gilliam was sentenced to life in prison. A motion for new trial was filed on June 12, 1996, and was denied on February 19, 1997. A notice of appeal was filed on March 4, 1997, and the appeal was docketed in this Court on April 9, 1997. The case was submitted for decision without oral argument on June 2, 1997.

3. Gilliam likewise fails in his challenges to the admission into evidence of his confession to police. He first contends that it was error for the trial court to refuse to exclude the confession because of a violation of OCGA § 24-3-50. He claims that his confession was induced by the hope of benefit because detectives informed him that it would help if he told the truth, that the judge would know that he confessed, and because one of the detectives related that he had "seen cases where a person did a shooting and went home with a leg monitor." But merely encouraging a suspect to tell the truth does not amount to the hope of benefit so as to render the suspect's inculpatory statement involuntary and therefore inadmissible. *Henry v. State*, 265 Ga. 732, 736 (4) (c) (462 SE2d 737) (1995). Nor does telling a suspect that his cooperation will be made known. *Arline v. State*, 264 Ga. 843, 844 (2) (452 SE2d 115) (1995). As to the allegation that a leg monitor was mentioned, the detectives involved in questioning Gilliam testified at the *Jackson-Denno* hearing and all denied making such a statement. It was for the trial court to weigh the credibility of the witnesses and accordingly make its determinations of fact. *Arline,* supra at 844 (2); *Caffo v. State*, 247 Ga. 751, 757 (3) (279 SE2d 678) (1981).

Gilliam also urges that his statement was inadmissible because he was not advised of his *Miranda* rights until after he confessed. However, the officers' testimony established that the inculpatory statement at issue, which was reduced to writing, was made after Gilliam was twice given the *Miranda* warnings and had executed written waivers of rights. Again, it was within the trial court's province to believe the officers' version of events rather than the scenario depicted by Gilliam. *Arline,* supra at 844 (2); *Caffo,* supra at 757 (3).

Finally, Gilliam asserts that the statement was inadmissible because the police did not promptly take him before juvenile authorities, and because his mother was not present during the police interviews. Failure of the police to promptly take Gilliam before the juvenile court or to contact a juvenile court intake officer as provided by OCGA § 15-11-19 (a) (3) does not, as a matter of law, make the confession inadmissible. *Lattimore v. State*, 265 Ga. 102, 104 (2) (454 SE2d 474) (1995). Nor is the statement rendered illegal merely because it was made in the absence of Gilliam's mother. *Marshall v. State*, 248 Ga. 227, 228 (2) (282 SE2d 301) (1981). The issue is whether there was a knowing and intelligent waiver by Gilliam of his constitutional rights in making the incriminating statement, assessed under the totality of the circumstances as set forth in *State v. McBride*, 261 Ga. 60, 63 (2) (b) (401 SE2d 484) (1991) and *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). Applying the nine-factor test, it is clear that Gilliam at sixteen was old enough, educated enough, and well enough informed to understand the subject of the

police questioning and the rights he was giving up. The evidence supports the finding that he did not ask for a lawyer or for any family member to be present. In fact, Gilliam testified at the *Jackson-Denno* hearing that he did not try to contact his mother earlier because he was afraid to tell her what he had done. The evidence also shows that there was nothing unusual or coercive about either the length or method of the interrogation, and allows the conclusion that Gilliam made a knowing, intelligent, and voluntary decision to speak with the detectives and give his statement. Thus, it was not error for the trial court to rule in favor of admissibility. *Berry v. State*, 267 Ga. 605, 610 (8) (481 SE2d 203) (1997).

4. Lastly, the trial court did not err in refusing to charge the jury on aggravated assault *as a lesser included offense* of felony murder under the circumstances of this case.[2] The court clearly instructed the jury about the elements of aggravated assault as the offense underlying the felony murder charge. The evidence at trial showed without dispute that the victim died as the result of the gunshot wound inflicted by Gilliam. Thus, the evidence showed completion only of the greater offense, that is, there was no evidence from which the jury could conclude that death resulted from a cause other than the gunshot wound inflicted by Gilliam. Accordingly, the court was not required to offer aggravated assault as a lesser option. *Rowe v. State*, 266 Ga. 136, 139 (3) (464 SE2d 811) (1996); *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 6, 1997 —
RECONSIDERATION DENIED NOVEMBER 21, 1997.

*Mark J. Nathan,* for appellant.

*Spencer Lawton, Jr., District Attorney, Melanie Higgins, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.

---

[2] The court rejected such a charge out of double jeopardy concerns as Gilliam had been adjudicated delinquent based on the charge of aggravated assault.