## A98A1084. MARSHALL v. THE STATE.
(504 SE2d 764)

RUFFIN, Judge.

A jury found Valerie L. Marshall guilty of theft by taking. Marshall appeals, asserting that the evidence was insufficient to convict her, that a pre-trial photographic lineup and showup were impermissibly suggestive, and that the trial court erred in denying her motion

---

to dismiss the charge against her. For the following reasons, we affirm.

1. " 'On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489) (1997).

Viewed in a light most favorable to support the verdict, the evidence reveals that on Sunday, July 16, 1995, Katherine Stevens, while working at South Atlanta Leisure, sold patio furniture to a "black female." The customer paid for the furniture, valued at over $1,000, with a check that bounced. According to Stevens, the customer said she needed the furniture quickly and did not care that the store did not have a full set of matching cushions for the furniture. Stevens said that she "chatted a good bit" with the customer, including discussing the customer's weight problem, diets, and the difficulty of losing weight. When the check was returned to the store, Stevens contacted Marshall, whose name was listed on the check. According to Stevens, Marshall said that her purse or wallet had been stolen and that checks had been written against her account. Stevens gave a description of the customer to the Fayette County Police Department. The police officer who investigated the matter obtained a photograph of Marshall and placed it in a photographic lineup. Stevens identified Marshall as the customer who purchased the furniture with the bad check. Stevens testified regarding this identification at trial.

The police officer testified that several days after the lineup, he went to Marshall's house and, from a road adjacent to the house, took photographs of patio furniture located in Marshall's backyard. The officer stated that Stevens had given him a piece of cloth matching the pattern of the cloth on the cushions purchased with the bad check. This piece of cloth matched the cloth on the furniture cushions in Marshall's backyard. Stevens subsequently identified the furniture from the photographs as the furniture she sold on July 16, 1995.

The officer returned to Marshall's house with a warrant in order to confiscate the furniture, which was now in Marshall's shed. Stevens accompanied him to Marshall's home. The officer spoke with Marshall's husband, who first stated that the furniture came from

Biloxi, Mississippi, but then said it was from Birmingham, Alabama. The husband changed his story a third time, saying the furniture was purchased at a yard sale in Montgomery, Alabama. The officer identified Marshall at trial as the person he arrested for theft by taking the patio furniture.

After the State rested, the trial court refused to direct a verdict on the basis that Stevens did not identify Marshall at trial. The failure or inability of a witness "to make a positive identification at trial affects the weight of the evidence and the credibility of the witness, which are jury questions." *Harper v. State*, 213 Ga. App. 444, 445-446 (1) (445 SE2d 303) (1994).

We find there is competent evidence to support each fact necessary to make out the State's case and for a rational trier of fact to find Marshall guilty beyond a reasonable doubt of the crime charged. *Howard*, supra; *Jackson v. Virginia*, supra.

2. Marshall asserts that the pre-trial lineup and showup were impermissibly suggestive and should not have been admitted at trial.

(a) The test for admitting evidence of a photographic lineup " 'is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' [Cit.]" *Green v. State*, 219 Ga. App. 878, 881 (4) (467 SE2d 203) (1996). "If, under the totality of the circumstances, there was no substantial likelihood of irreparable misidentification, the witness' pre-trial identification would be admissible notwithstanding any suggestiveness in the procedure itself. [Cits.] The factors to be considered in evaluating the substantial likelihood of irreparable misidentification include: the opportunity of the witness to view the perpetrator at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the perpetrator; the level of certainty demonstrated by the witness at the time of identification; and, the length of time between the crime and the identification. [Cit.]" *Nicholson v. State*, 265 Ga. 711, 712-713 (2) (462 SE2d 144) (1995).

In this case, Marshall argues that the photographic lineup was impermissibly suggestive because her photograph was not a jail identification photograph but her driver's license photograph. Marshall pointed out that the other five photographs in the array contained height measurement lines while the height measurement lines in her photograph were drawn on. Furthermore, Marshall maintains that the other photographs depicted dark-skinned African-American females with medium and long hair, while she is a light-skinned African-American with short hair.

After review of the array, we find that the hair lengths of all the women depicted are similar, and Marshall's skin color does not appear to be markedly different from the other women. As for the

measurement lines, the difference between Marshall's photograph and the other women is only apparent after very close scrutiny of the lines. And, we do not see how the slight difference in the lines would have in any way suggested to Stevens that Marshall's photograph was the one to choose. Accordingly, we do not find that the array was impermissibly suggestive. See *Cheeves v. State*, 157 Ga. App. 566 (1) (278 SE2d 148) (1981) (facts that the backgrounds in some of the photographs in a photographic array were different, some of the photographs were slightly smaller than the others, the ages of the suspects were different, and several of the men depicted were wearing hats did not make array impermissibly suggestive); *Brewer v. State*, 219 Ga. App. 16, 20 (6) (463 SE2d 906) (1995) (defendant's contention that shading and tone of his photograph in array made lineup impermissibly suggestive was without merit).

Even if the lineup was found to be suggestive, there is no evidence of irreparable misidentification. See *Nicholson*, supra. The lineup occurred on August 25, 1995, less than six weeks after the purchase of the furniture on July 16, 1995. And, it was clear that Stevens had a good opportunity to view the customer, as she "chatted a good bit" with the customer about their weights and dieting. See id.

Marshall argues that Stevens' pre-trial identification was not reliable because Stevens' prior description of the customer as a "dark-skinned" African-American female weighing 175 pounds was inconsistent with Marshall's claim that she is a "light-skinned, thin-set female."[1] First, we note that Marshall's weight was not an issue in making the pre-trial identification via the photographic lineup as the photographs only showed the faces of the women. Furthermore, it is possible that Marshall may have lost weight in the two years from the time of the crime and the trial. Regarding Marshall's skin color, Stevens explained at trial that she used the phrase "dark-skinned" as an alternative description to "black female" and did not intend to use the phrase in conjunction with "black female." That is, she did not mean to describe Marshall as an African-American with dark skin.

Even if Stevens' description of Marshall was not entirely accurate as to weight and skin color, we find these discrepancies insufficient to conclude that a substantial likelihood of irreparable misidentification exists. See *Nicholson*, supra. Rather, such discrepancies go to the credibility the jury afforded to Stevens' testimony. See *Wimberly v. State*, 233 Ga. 386, 387 (3) (211 SE2d 281) (1974) (" 'Identity is a question for the trior of fact, and where a witness identifies a defendant . . . the credibility of the witness making such identifica-

---

[1] The investigating officer testified that Marshall was light-skinned and appeared at trial to weigh only 135 to 140 pounds.

tion is not to be decided by this court. [Cits.]' [Cit.]").

(b) Marshall asserts that Stevens' identification of her at her house when Stevens accompanied the police officer to retrieve the furniture constituted an impermissibly suggestive showup. However, there is no evidence that Stevens identified Marshall as the perpetrator at that time or that the State attempted to introduce the evidence for identification purposes. Accordingly, we find this assertion without merit.

3. Marshall claims that the trial court erred in denying her motion to dismiss the charge against her since she did not have proper notice of it. However, the transcript reveals that Marshall did not specifically move to dismiss the charge on the grounds she raises on appeal. Prior to trial, Marshall's counsel stated that "there is a difference, Your Honor, between the accusation and what has been set forth in this Court as being what shall be proven. The accusation sets forth that greater than $500 in currency is the item that was taken, when in fact this case is about patio furniture that was supposedly taken after a check was written for it. We submit that there is no way to rectify . . . those two factual points, and . . . that this case should be dismissed with prejudice." In requesting a dismissal, Marshall's attorney was asserting that there was a fatal variance between the evidence to be presented and the crime charged. See *Bell v. State*, 220 Ga. App. 293 (1) (469 SE2d 714) (1996).

The State clarified the situation, noting that an amended accusation had been filed listing the property rather than the currency. After this clarification, Marshall's counsel did not renew his motion or assert a new motion to dismiss based on the fact he had not seen the amended accusation. Rather, he merely stated "[w]ell, of course, then we've not seen the new accusation, which I think we at least need to see. Thank you, Your Honor." Immediately prior to the State calling its first witness, defense counsel again pointed out that he had never seen the accusation, but did not specifically move to dismiss on this ground. "As this is a court for the correction of errors, we will not consider any issues raised on appeal that were not raised and preserved in the trial court. [Cit.]" *Cheesman v. State*, 230 Ga. App. 525, 526 (2) (497 SE2d 40) (1998).

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED JULY 27, 1998.

*Edward R. Downs, Jr.*, for appellant.
*William T. McBroom III, District Attorney, Randall K. Coggin, Assistant District Attorney*, for appellee.