## A98A2261. QADIR v. THE STATE.
(510 SE2d 362)

Judge Harold R. Banke.

Sirajuddin Qadir was convicted of four counts of armed robbery arising from two separate incidents. He enumerates three errors on appeal.

Both robberies occurred during the daylight hours as the victims, couples who appeared to be tourists, rode MARTA between the Five Points and East Lake stations. Qadir and his co-defendant[1] committed the first robbery in January 1997 and the second a month later.

Shortly after the February robbery, a MARTA employee flagged down a city police officer, who had noticed the two young men running, and reported that MARTA officers were in pursuit. With citizen assistance, the officer quickly located Qadir and his co-defendant and held them for a MARTA officer who retraced their tracks and recovered the gun at the base of a nearby bush.

One of the February victims and a witness from the train identified Qadir at a subsequent showup. Qadir gave a written statement to the MARTA officers who took him into custody which inculpated his co-defendant, but admitted they were together. *Held*:

1. Qadir maintains the trial court clearly erred in denying his motion to suppress this statement, arguing that as a juvenile, he was entitled to closer scrutiny of whether his waiver was knowing and voluntary. Notwithstanding Qadir's youth, his mother's absence during the questioning did not, of itself, render his statement illegal. *Gilliam v. State*, 268 Ga. 690, 692 (3) (492 SE2d 185) (1997).

Instead, the admissibility of Qadir's confession must be assessed under the nine-factor test applied in *State v. McBride*, 261 Ga. 60, 63 (2) (b) (401 SE2d 484) (1991). Having considered the record, we find that Qadir at 15 was old enough, educated enough, and aware enough to understand the subject of the police questioning and the rights he was waiving.[2] Id.; *Gilliam*, 268 Ga. at 692-693. The arresting officer read Qadir his rights, explained them in layman's terms, permitted him to speak to his mother, and specifically asked whether

---

[1] Midway through the trial, the co-defendant's case was severed.

[2] Qadir's testimony indicated that he was in school at the time of the first offense. In a subsequent proceeding, he testified that he was home schooled.

he wanted a lawyer. At that point, Qadir wrote out his statement. The interview lasted no longer than 30 minutes. The record supports a finding that Qadir did not request a lawyer or the presence of a family member. Id. Nor did anything coercive or unusual induce Qadir to give the statement. Further, Qadir did not specifically repudiate its contents. The record supports the conclusion that his decision to give the statement was knowing, intelligent, and voluntary. Id. In any event, the statement was not materially inconsistent with Qadir's trial testimony. See *Moore v. State*, 207 Ga. App. 897, 899 (2) (429 SE2d 340) (1993).

2. Qadir argues that the trial court erred by denying his motion to suppress an identification based on an impermissibly suggestive photographic lineup. He claims that his and his co-defendant's photos were the clearest in the array.

The test for admitting evidence of a photographic array is whether the identification procedure was so suggestive as to create a very substantial likelihood of irreparable misidentification. *Marshall v. State*, 233 Ga. App. 573, 575 (2) (a) (504 SE2d 764) (1998). Absent such a likelihood, the witness' pretrial identification is admissible notwithstanding any suggestiveness in the procedure itself. Id.

Here, the witness testified that the January robbery occurred 12 feet from him and he looked at the perpetrator at every opportunity without drawing attention to himself. The witness stated that he noticed the perpetrator even before the offense because he kept moving around the rail car. The witness indicated that he paid close attention to the perpetrator, describing his attire, stature, complexion and manner. The record shows that Qadir matched that description. After viewing the lineup, the witness was "very sure" about his identification, which was made approximately two months after the offense. *Crumbley v. State*, 189 Ga. App. 384, 385 (1) (375 SE2d 482) (1988) (five-month lapse did not undermine identification). In light of these circumstances, we cannot say the trial court erred in admitting evidence of the photographic lineup. *Nicholson v. State*, 265 Ga. 711, 713 (2) (462 SE2d 144) (1995). The witness' subsequent confusion at trial went to his credibility. See *Taylor v. State*, 232 Ga. App. 383, 385 (501 SE2d 875) (1998).

3. The evidence, viewed in the light most favorable to the State, was sufficient to permit the jury to find all the essential elements of the crimes. *Jackson v. Virginia*, 443 U. S. 307, 319-320 (99 SC 2781, 61 LE2d 560) (1979). At trial, one of the victims of the January robbery identified Qadir as the "man who held me up," testifying that she got a look at him when he faced her to pull off her necklace while keeping the gun pressed into her husband's neck. Moreover, as noted, a passenger identified Qadir in a photographic lineup.

The evidence of the February robbery was also sufficient. One of

the victims and another witness from the train identified Qadir at a showup shortly after the offense. At trial, the witness again testified of Qadir's involvement, though he was unsure whether Qadir was the gunman or the lookout, probably because they resembled each other so closely. The bus driver who flagged down the city officer testified that Qadir and his co-defendant ran to his bus at the East Lake MARTA station and subsequently demanded to be let off after two young girls loudly told the driver the men had robbed passengers on the train at gunpoint. That testimony, in conjunction with the evidence of the two men's joint escape and capture, the discovery of the gun and one of the victim's wallets along their route, and Qadir's statement to police, was sufficient to sustain a finding that Qadir was a party to the February robbery. *Roundtree v. State*, 192 Ga. App. 803, 805 (2) (386 SE2d 548) (1989) (witnesses' credibility and the weight given their testimony on the perpetrator's identity were for the jury).

*Judgment affirmed. Johnson, P. J., and Smith, J., concur.*

DECIDED DECEMBER 9, 1998 —
RECONSIDERATION DENIED JANUARY 6, 1999.

*Maryann F. Blend*, for appellant.
Sirajuddin Qadir, *pro se*.
*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Barbara B. Conroy, Assistant District Attorneys*, for appellee.