## A02A0308. MARTIN v. THE STATE.
(568 SE2d 754)

MIKELL, Judge.

After a jury trial, Kenyata Columbus Martin was convicted of one count of armed robbery and one count of possession of a firearm during the commission of a felony. On appeal, he asserts that the trial court erred by failing to transfer his case to juvenile court and by admitting his statement into evidence. We affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[1] So viewed, the evidence shows that Martin was 13 years old when the offenses for which he was convicted occurred. Martin, who was tried as an adult, admitted on direct examination that he used a gun to commit the robbery but claimed that he was coerced to do so by one of the co-defendants.

1. In his first enumeration of error, Martin argues that the court had a duty to investigate whether his case should be transferred to juvenile court. He further argues that the court erred in failing to transfer the case. We disagree.

Pursuant to OCGA § 15-11-28 (b) (2) (A) (vii), "[t]he superior court shall have exclusive jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed . . . [a]rmed robbery if committed with a firearm." Martin argues that subsection (b)

---

[15] See *Claxton Enterprise v. Evans County Bd. of Commrs.*, 249 Ga. App. 870, 877 (5) (549 SE2d 830) (2001).

[1] (Citation and punctuation omitted.) *Hutchinson v. State*, 232 Ga. App. 368, 369 (501 SE2d 873) (1998).

(2) (B) of the statute imposed the duty to investigate the case. Instead, that subsection provides that "[a]fter indictment, the superior court *may* after investigation and for extraordinary cause transfer any case involving a child 13 to 17 years of age alleged to have committed any offense enumerated in subparagraph (A) of this paragraph [to the juvenile court]."[2] In interpreting statutes, we are required to give words their ordinary and literal meaning.[3] By the use of the word "may," subsection (b) (2) (B) does not establish a duty to investigate and transfer the case but gives the superior court the discretion to do so should it so desire.[4] Thus, Martin's argument fails.

2. Next, Martin argues that his confession is inadmissible for two reasons: (1) the state violated OCGA § 15-11-47[5] because the detectives should have taken him to a juvenile court or contacted a juvenile court officer before interviewing him and notified his guardian of his arrest; and (2) he was given hope of receiving a benefit in exchange for his confession. "The standard for determining whether or not a confession or admission was voluntary is the preponderance of the evidence standard. The decision of the trial court on this point will not be disturbed on appeal unless there is obvious error."[6]

(a) OCGA § 15-11-47 (a) (3) provides that "[a] person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall . . . [b]ring the child immediately before the juvenile court or promptly contact a juvenile court intake officer." However, the "[f]ailure of the police to promptly take [the defendant] before the juvenile court or to contact a juvenile court intake officer as provided by OCGA § 15-11-19 (a) (3) [redesignated OCGA § 15-11-47 (a) (3), effective July 1, 2000,] does not, as a matter of law, make the confession inadmissible."[7] Furthermore, we have rejected the per se exclusionary rule for statements given by juveniles outside the presence of a family member.[8] Instead, "[t]he issue is whether there was a knowing and intelligent waiver by [the defendant] of his constitutional rights in making the incriminating statement, assessed under the totality of the circumstances."[9] When applying the totality

---

[2] (Emphasis supplied.) OCGA § 15-11-28 (b) (2) (B).

[3] See *Carswell v. State*, 251 Ga. App. 733, 734 (1) (b) (555 SE2d 124) (2001).

[4] See *Bishop v. State*, 265 Ga. 821, 822 (1) (462 SE2d 716) (1995) (OCGA § 15-11-5 (b) (2) (redesignated as Code section 15-11-28 (b) (2), effective July 1, 2000) gives the superior court post-indictment discretion to transfer cases to juvenile court).

[5] Formerly OCGA § 15-11-19.

[6] (Citation and punctuation omitted.) *Barnes v. State*, 178 Ga. App. 205, 206 (2) (342 SE2d 388) (1986).

[7] (Citation and punctuation omitted.) *Gilliam v. State*, 268 Ga. 690, 692 (3) (492 SE2d 185) (1997).

[8] *Attaway v. State*, 244 Ga. App. 5, 6 (534 SE2d 580) (2000).

[9] (Citations omitted.) *Gilliam*, supra at 692 (2).

of the circumstances test, the court considers the following factors:

> The age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether accused refused to voluntarily give statements on prior occasions; and whether accused repudiated an extrajudicial statement at a later date.[10]

We consider the evidence relevant to these nine factors below.

The evidence shows that Detective D. P. Henry of the Gwinnett County Police Department traveled to Martin's school in Tift County to arrest him. Martin was taken directly to the Tift County Sheriff's Office where he was interviewed. Detective Henry did not talk to Martin's guardian, his grandfather, before interviewing Martin, but there was evidence that the grandfather had been contacted the previous evening and informed that Martin would be arrested the next day.

Before questioning Martin, Detective Henry advised him of his rights using the Advice of Rights to Juveniles form. At the *Jackson-Denno* hearing, Detective Henry testified that he put the form in front of Martin and read each paragraph to him. After reading each paragraph, the detective asked Martin if he understood what had been read and Martin replied that he did. Detective Henry then had Martin initial each paragraph to show that he understood each of his rights. Martin also signed the form indicating that he understood and was waiving his rights, including the right to have a parent or guardian present during the questioning. Detective Henry testified that when he asked Martin if he wanted his grandfather present during the interview, Martin indicated that he did not.

The interview took place in a conference room at the Tift County Sheriff's Office and lasted approximately 40 minutes. Detective Henry interviewed Martin first and then obtained his taped statement, which was 15 to 16 minutes long. Upon questioning from the court, the detective testified that during the course of the interview, Martin did not repudiate or change any portion of his statement nor were there any inconsistencies in what he said.

Applying the nine factors, it appears that Martin was old enough and educated enough to understand the nature of the charge. It is

---

[10] (Citation omitted.) *Attaway*, supra at 6-7.

also clear from the record that Martin was intelligent enough to understand the rights he waived before giving his statement. We note that the record contains two letters that Martin wrote to the judge explaining why he committed the crime, requesting leniency in his sentencing, and complaining that further incarceration would serve no purpose because prison did not afford him the opportunity "to get into anything productive." Martin was not denied the opportunity to consult with relatives or an attorney. Instead, the evidence shows that Martin refused the option to have his guardian present for the interview.

Although not yet indicted, Martin was under arrest at the time he gave his statement. The evidence also shows that there was nothing coercive or otherwise improper about the method or length of the interrogation. There was no evidence that Martin had ever refused to give a voluntary statement. Finally, Martin has never repudiated his confession. Instead, consistent with his statement, he testified at trial that he committed the crimes. Balancing the circumstances, we find that the trial court's conclusion that Martin knowingly and intelligently waived his rights and made a voluntary statement was not clearly erroneous.

(b) The determination as to whether Martin received hope of receiving a benefit depends totally upon the credibility of the witnesses. Martin testified that Detective Henry told him that his case would remain in juvenile court if Martin talked to him before they took his statement. Detective Henry denied that he gave Martin any hope of benefit or promised him anything in exchange for his statement. As "[i]t was for the trial court to weigh the credibility of the witnesses and accordingly make its determinations of fact,"[11] Martin's argument fails.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 26, 2002 —
RECONSIDERATION DENIED JULY 16, 2002 — 

*Clark & Towne, Wystan B. Getz, W. Keith Davidson,* for appellant.

*Daniel J. Porter, District Attorney, Wesley C. Ross, Assistant District Attorney,* for appellee.

---

[11] (Citations omitted.) *Gilliam,* supra at 692 (3).