## A03A1184. EPPS v. THE STATE.
(584 SE2d 701)

BLACKBURN, Presiding Judge.

Following a jury trial, Ricky Epps appeals his conviction for financial transaction card theft, OCGA § 16-9-31, financial transaction card fraud, OCGA § 16-9-33, and financial identity fraud, OCGA § 16-9-121, contending that: (1) the evidence was insufficient to support the verdict; (2) a fatal variance between the accusation for financial identity fraud and the evidence regarding the date of the financial identity fraud rendered the accusation void; and the trial court erred by (3) admitting certain copies of transaction receipts in violation of the best evidence rule; (4) admitting evidence of an allegedly unduly suggestive pretrial identification; and (5) denying his written request to charge the jury regarding immunity and leniency. For the reasons set forth below, we affirm.

1. Epps contends that the evidence was insufficient to support the verdict. We disagree.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia.*[1] Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.

*Phagan v. State.*[2]

Viewed in this light, the record shows that, on December 22, 2000, Epps was shopping in a Kmart store with Jessica Graham, a Kmart employee, and a male friend. After selecting approximately $800 worth of items from the electronics department such as TVs and VCRs, Epps approached the checkout counter manned by Shadavia Perry. Epps handed Perry a falsified credit card on which the original numbers had been obscured and the numbers from an account held by Kahalil Ali had been superimposed. Ali did not know that Epps had access to his account number and had not authorized the

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Phagan v. State*, 243 Ga. App. 568, 569-570 (2) (533 SE2d 757) (2000).

purchase. When the card did not scan properly, Perry manually punched in the account number, and the sale was approved.

The following day, Epps returned to the same Kmart and, again, selected approximately $600 worth of electronic equipment and approached Graham's station as cashier in the jewelry department. Like the day before, Epps presented an invalid credit card which could not be scanned, and Graham completed the purchase by manually entering Ali's stolen account number. This transaction was captured on the store's video surveillance system.

At trial, Graham testified that, prior to the purchases in question, she had known Epps for about five months and had been dating his cousin. She confirmed that, on the dates in question, Epps used a stolen credit card number to purchase electronic items from Kmart. She also admitted to using the stolen account number herself to make a purchase from Kmart on December 24, 2000. In addition, Perry testified that, after the credit card transactions made by Epps, she learned from Graham that the credit card number had been stolen. Both Graham and Perry were later convicted for their participation in the credit card fraud.

This evidence was more than ample to support Epps' convictions. See, e.g., *Jordan v. State;*[3] *Green v. State.*[4] And, although Epps testified that he never used Ali's number, the jury was authorized to disbelieve him. *Phagan,* supra.

2. Epps contends a fatal variance between the accusation against him alleging financial identity fraud and the evidence regarding the date of the financial identity fraud rendered the accusation against him void. The accusation in this case was not absolutely void, however, and, as such, Epps has waived his right to raise the error of which he now complains for the first time on appeal.

The record shows that the State proceeded to trial against Epps pursuant to *both* an indictment and an accusation. Epps was indicted by the Muscogee County Grand Jury for the crimes of financial transaction card theft and financial transaction card fraud, and, at a later date, the State brought an accusation against Epps for the crime of financial identity fraud. This enumeration applies solely to the accusation for financial identity fraud, not those crimes covered in the indictment.

In the accusation, which was filed on August 27, 2001, the State charged Epps with committing one count of financial identity fraud "on or about the 22nd of December, 2000 and the 23rd day of December, 2001." Epps now contends that, as the accusation charged him

---

[3] *Jordan v. State*, 242 Ga. App. 547 (528 SE2d 858) (2000).
[4] *Green v. State*, 223 Ga. App. 467 (477 SE2d 895) (1996).

with a future crime, the entire accusation was absolutely void and his conviction for financial identity fraud must be reversed. We disagree.

In general, "unless the defects appearing in the indictment or accusation are so great that the indictment or accusation is absolutely void, [the] right to a perfect indictment or accusation may be waived, and is waived by going to trial under a defective indictment or accusation without complaint." *Moore v. State.*[5]

> If the [accusation was] void *for any reason*, the question should have been raised by demurrer before pleading to the merits, or by motion in arrest of judgment after conviction. No demurrers or motions in arrest of judgment were filed by [Epps]. The issue of the purported voidness of certain counts of the indictments was first raised in [Epps'] motions for new trial. Under controlling Supreme Court authority, [Epps' motion] for new trial cannot be considered to be a viable procedural substitute for [a motion] in arrest of judgment.

(Citations and punctuation omitted.) *Abreu v. State.*[6] See also *Parks v. State.*[7]

Here, the inclusion of an erroneous future date did not make the accusation absolutely void, thereby preserving Epps' enumerated error. "The general rule is that when the exact date of the commission of the crime is not a material allegation of the indictment, the commission of the offense may be proved to have occurred any time within the statute of limitations." (Punctuation omitted.) *Martin v. State.*[8] In this case, Epps was accused of committing financial identity fraud *on or about* December 22, 2000, and December 23, 2001. "It is essential, to sustain a conviction of a criminal offense, that it be distinctly shown that the alleged offense was committed prior to the suing out of the accusation, or to the finding of the indictment or presentment by the grand jury." *Askew v. State;*[9] *Minhinnett v. State.*[10] This rule is not applicable here, however, because the accusation included a correct date. The crime was alleged to have been committed on or about two separate dates. While the crime could not have been committed on or about December 23, 2001, and the accusation was thus void as to the December 23, 2001 charge, such fact does not

---

[5] *Moore v. State*, 94 Ga. App. 210, 213 (1) (94 SE2d 80) (1956).
[6] *Abreu v. State*, 206 Ga. App. 361, 363 (2) (425 SE2d 331) (1992).
[7] *Parks v. State*, 246 Ga. App. 888 (543 SE2d 39) (2000).
[8] *Martin v. State*, 196 Ga. App. 145, 146 (1) (395 SE2d 391) (1990).
[9] *Askew v. State*, 3 Ga. App. 79 (59 SE 311) (1907).
[10] *Minhinnett v. State*, 106 Ga. 141 (32 SE 19) (1898).

affect the validity of the December 22, 2000 charge, and thus the accusation was not totally void. The evidence supported the fact that the crime was committed on or about December 22, 2000. Since the accusation was not absolutely void, Epps waived his right to challenge it by not properly raising the issue in the court below. *Abreu*, supra.

3. Epps contends that the trial court erred by admitting copies of Kmart's receipts of the fraudulent transactions rather than the originals over his best evidence objection. OCGA § 24-5-2, however, provides: "In order to admit secondary evidence, it shall appear that the primary evidence for some sufficient cause is not accessible to the diligence of the party. This showing shall be made to the court, who shall hear the party himself on the question of diligence and the inaccessibility of the primary evidence." The question of inaccessibility of primary evidence and diligence of the party is a determination within the discretion of the trial judge, and his decision will not be overturned unless that discretion is abused. *Brooks v. State.*[11] At trial, Kmart's loss prevention manager testified that the originals of the receipts were maintained at the store but, after diligently searching for them, he had not been able to locate the originals in time for trial. He further testified that the photocopies of the originals that were admitted at trial had been personally made by him and accurately reflected the original receipts. Based on this testimony, the trial court did not abuse its discretion by admitting the photocopies of the transaction receipts pursuant to OCGA § 24-5-2.

4. Epps contends that the trial court erred by admitting evidence of an unduly suggestive pretrial identification of him made by Graham. The record shows that Graham was arrested with regard to the fraudulent transactions before Epps was likewise apprehended. Graham confessed to the crimes, and she told police that, although she did not know his last name, a man named Ricky had also been involved and provided his address. Police discovered that Epps resided at the address given by Graham. Later, Graham was shown a single photo of Epps, whom she immediately identified as the man involved with her in the fraudulent transactions.

Epps argues that, because Graham was shown only a single photo of Epps, the pretrial identification was unduly suggestive. Pretermitting this issue, any error from this identification was harmless, as Graham testified that she had known Epps four or five months prior to being shown the photograph. *Armstrong v. State.*[12] Moreover, Epps, himself, confirmed this relationship, and videotape

---

[11] *Brooks v. State*, 63 Ga. App. 575, 576 (11 SE2d 688) (1940).
[12] *Armstrong v. State*, 249 Ga. App. 772, 775 (2) (549 SE2d 545) (2001).

showed Epps in the Kmart purchasing the electronic equipment. This enumeration, therefore, is meritless.

5. Finally, Epps contends that the trial court erred by denying his written request to charge the jury on immunity and leniency regarding the testimony of Graham and Perry. "Our . . . review of the record reveals no evidence that [Graham or Perry] testified in exchange for immunity or leniency. . . . Because it is not error to refuse a requested charge when there is no evidence to support it, the trial court did not err in refusing appellant's requested charge on leniency or immunity." (Footnote omitted.) *Monsalve v. State.*[13]

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED JULY 2, 2003.

*Mark A. Casto*, for appellant.

*J. Gray Conger, District Attorney, Susan L. Henderson, Assistant District Attorney*, for appellee.

---

[13] *Monsalve v. State*, 271 Ga. 523, 526 (3) (519 SE2d 915) (1999).
[1] See *Gay v. State*, 258 Ga. App. 854 (575 SE2d 740) (2002).