A04A0450. LAWRENCE v. THE STATE.
(600 SE2d 444)

JOHNSON, Presiding Judge.

A jury found Gary Lawrence guilty of robbery. He appeals from the conviction entered on the verdict, claiming the evidence was insufficient to support the conviction, the trial court erred in denying him the opportunity to conduct voir dire of individual jurors, the trial court pressured the jury into reaching a verdict, and he was denied effective assistance of trial counsel. None of the enumerations has merit, so we affirm his conviction.

1. When reviewing a conviction, this Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] This Court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses.[2]

---

[1] See *Holzendorf v. State*, 235 Ga. App. 462, 463 (509 SE2d 737) (1998).
[2] Id. at 464.

Construed in favor of the verdict, the evidence shows that a woman was leaving her job at the Buford Highway Flea Market on foot at about 8:00 p.m. As she walked across the parking lot, she felt her purse being tugged. She turned and saw that a man was attempting to snatch her purse. The victim resisted, yelled for help, and struggled with the man for about three minutes.

A taxicab driver who was parked at the flea market heard the woman's screams. He and his friend drove in the direction of the screams in order to investigate. They saw a man dragging the victim across the ground as she held onto her purse. The cab driver shined his high-beam headlights on the man and the victim, and realized that a robbery was taking place. When the victim finally relinquished the purse, the robber kicked her and ran from the scene.

The victim, the cab driver, and the cab driver's friend all pursued the robber on foot. The robber dropped the purse and kept running. The victim stopped to retrieve her purse and its contents, while the cab driver and his friend continued the chase. The cab driver never lost sight of the robber. He chased the robber across Buford Highway, tripped him, and then he and his friend detained the robber and escorted him across the highway to a police officer.

In the presence of the police officer, the victim and the cab driver positively identified Lawrence as the man who committed the robbery. The police officer observed that the victim had injuries consistent with having been kicked and that her clothing was stained and torn. The officer took Lawrence into custody.

At trial, the victim could not remember much about the robber's appearance. But she testified that she "might be able to recognize his face." When asked if the person who robbed her was in the courtroom, she replied, "I think, if I'm not wrong, it's the man that is over there," and identified Lawrence. The cab driver testified that he did not get a good look at the robber's face and that he would only recognize him if the robber was wearing the same clothes he wore at the time of the crime.

Lawrence contends that this was a case of mistaken identity. He maintains that he was not the robber, and that he was standing at a bus stop near the flea market when two men "jumped on" him, dragged him across the street, and accused him of robbery. He points out that the victim and the cab driver did not positively identify him at trial as the robber, and urges that the witnesses were not credible and that it was dark outside when the robbery occurred. His argument presents no basis for reversal.

Identity is a question for the trier of fact, and where a witness identifies a defendant, the credibility of the witness making the

identification is not to be decided by this Court.[3] Although Lawrence has denied being the robber, it is the function of the jury, and not this Court, to resolve conflicts in the evidence.[4] The cab driver chased Lawrence from the time he snatched the purse until he caught him, never lost sight of Lawrence, and held Lawrence until the police took custody of him. And the arresting officer testified that both the victim and the cab driver positively identified Lawrence as the robber when he was first captured. The evidence was sufficient for a rational trier of fact to find Lawrence guilty beyond a reasonable doubt of robbery.[5]

2. Lawrence complains that the court erred in conducting voir dire of individual jurors on its own, instead of allowing defense counsel to pose questions to each juror. There was no error.

During voir dire, defense counsel asked the entire jury pool if any of the jurors "had a stronger opinion about the subject of theft crimes than, say, the average man on the street." Eight of the jurors raised their hands. The trial judge indicated that she would question those jurors individually. The court placed the eight jurors in the jury room and summoned them out one at a time. In the presence of defense counsel and the prosecutor, the court questioned each of the eight jurors individually about their previous responses and asked if they could be fair in listening to the facts and applying the law to the case at hand. All eight of the jurors indicated that they could be fair.

The purpose of voir dire is to ascertain the impartiality of jurors.[6] The control of the pursuit of such a determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review.[7] While a defendant has a right to an individual examination of each juror, the trial court has discretion as to whether a party *or the court itself* shall propound the questions.[8]

In this case, the trial court acknowledged the jurors' responses to defense counsel's question and then inquired of each juror's position more thoroughly. The court set out to determine if the jurors could be fair and impartial, and all indicated that they could. Defense counsel was present and could have interjected with questions of his own had the court done an inadequate job. In fact, the trial judge stated that she would conduct the voir dire "unless there was some issue that [the judge] had omitted." When counsel raised the issue after the jury was selected and before the trial began, the judge stated that defense counsel "could have mentioned any question that the court could have

---

[3] *Marshall v. State*, 233 Ga. App. 573, 576-577 (2) (a) (504 SE2d 764) (1998).
[4] *Holzendorf*, supra.
[5] See *McDonald v. State*, 256 Ga. App. 369, 370 (568 SE2d 588) (2002).
[6] See *Baker v. State*, 230 Ga. App. 813, 815 (1) (b) (498 SE2d 290) (1998).
[7] Id.
[8] *State v. Hutter*, 251 Ga. 615, 616-617 (307 SE2d 910) (1983).

asked that [he] wanted [the court] to ask" and that defense counsel "didn't indicate any questions that [the court] could have covered that [it] did not." We note that the one juror Lawrence said he wanted to question regarding why she paused before saying she could be fair, did not make it onto the jury.

The record shows that appropriate questions were asked of individual jurors, and the goals of voir dire were achieved. Lawrence has failed to show he was harmed by his inability to conduct his own inquiry of each juror regarding the answer to his question.[9]

3. The victim had reported that the robber was wearing a white cap when the crime was committed. Lawrence asserts that his attorney was ineffective because he failed to subpoena a copy of the book-in sheet from the sheriff's office to show that he was not wearing a white cap when he was admitted to the jail.

To establish ineffectiveness, an appellant must show both that his counsel's performance was deficient, and that the deficiency prejudiced him.[10] Failure to satisfy either prong of this test is fatal to an ineffectiveness claim.[11] Moreover, a defendant must overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional conduct.[12]

Even if we were to agree with Lawrence that counsel was deficient for not moving to admit the book-in sheet, we could not agree that admission of the document would have changed the outcome of the case. That the sheet failed to mention that Lawrence possessed a white cap at the time he was booked does not indicate that he was not wearing a white cap at the time the crime was committed. Lawrence has simply not shown that his case was harmed by counsel's failure to admit the document.[13] This enumeration is without merit.

4. Lawrence contends the trial court coerced the jury into reaching a verdict. We disagree.

After the jury had been deliberating about two hours, the trial judge informed the bailiff that she was considering recessing at 4:30 rather than 5:00 if the jury was not close to reaching a decision. The court called the foreperson out of the jury room and asked for an update. The foreperson informed the court that the jurors were split 10 to 2, adding that they had held that position for 45 minutes and that he believed they were making progress. The court told the foreperson that it was considering recessing *for the evening,* and

---

[9] See *Mathis v. State*, 176 Ga. App. 362, 363 (336 SE2d 299) (1985).

[10] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997).

[11] *Washington v. State*, 238 Ga. App. 561, 562 (2) (519 SE2d 234) (1999).

[12] Id.

[13] See generally *Brooks v. State*, 236 Ga. App. 604, 606-607 (3) (512 SE2d 693) (1999).

remarked, "I just didn't see the efficacy in staying an additional thirty minutes and recess at 5:00 if you guys are not close." The foreperson replied that he would check with the panel. The foreperson left and returned, stating that the jury was making progress and would like "to stay a little bit and try to reach our decision." The following exchange occurred:

> THE COURT: Okay. I'm not going to stay late, though, because I just want you all to understand that because, you know, I've got a busy calendar. I've been on the bench for two weeks and, you know, I've got about ten cases coming in Monday. So I'll let you stay a few more minutes, a reasonable amount of time, and then we'll be recessing. The only thing an additional thirty minutes is going to do is put us all in the traffic, if they're not close.
>
> FOREPERSON: Okay.
>
> THE COURT: We're not going to do a midnighter.

The jury reached a verdict about 30 minutes later.

We point out that defense counsel did not object to the court's remarks at trial. A defendant must object to the alleged impropriety at the time it occurs in order to afford the trial court the opportunity to take remedial action.[14] Accordingly, Lawrence's failure to object at trial waives the issue on appeal.[15]

In any event, we cannot conclude that the court, through its comments, put any pressure on the jury to reach a quick verdict. In fact, the transcript shows that if the jury could not reach a consensus within a few minutes, the court would recess for the evening and reconvene another day. The fact that the jury reached a unanimous decision about 30 minutes after the court made the remarks about the lateness of the day does not indicate that it coerced them into reaching a quick decision. The foreperson had indicated that the jurors were making progress and were only two votes away from reaching a verdict.

The trial court exercises wide discretion in controlling and regulating its business; this includes the power to determine the length of time a jury will be allowed to deliberate on a given day.[16] In this case, the trial court did not abuse that discretion.

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

---

[14] *Williams v. State*, 248 Ga. App. 628, 630 (2) (548 SE2d 350) (2001).

[15] See id.

[16] See *Williams v. State*, 205 Ga. App. 445, 447 (3) (422 SE2d 309) (1992).

DECIDED MAY 20, 2004.

*Sharon Smith-Knox*, for appellant.

*Jeffrey H. Brickman*, District Attorney, *Rosemary W. Brewer*, *Fatima E. Ziyad, Sheila A. Conners*, Assistant District Attorneys, for appellee.