A04A2143. KING v. THE STATE.

(605 SE2d 63)

BLACKBURN, Presiding Judge.

Following a jury trial, Demarlos King ("Appellant") appeals his conviction for two counts of aggravated assault, one count of aggravated battery, and one count of possession of a firearm during the

commission of a crime. In several improperly compound enumerations of error, King contends that: (1) the evidence was insufficient to support the verdict; and the trial court erred by (2) admitting certain identification evidence from both the victim and an eyewitness; (3) admitting certain hearsay statements made by the victim; (4) denying his motion for a mistrial after the prosecutor referred to a prior probation revocation hearing; and (5) imposing a greater sentence than the sentence rejected by Appellant in plea negotiations before trial. For the reasons set forth below, we affirm.

1. Appellant contends that the evidence was insufficient to support the verdict.[1] We disagree.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. An appellate court does not weigh the evidence or judge the credibility of the witnesses but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*.[2] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.

*Bartlett v. State*.[3]

Viewed in this light, the record shows that around 4:00 on the morning of June 30, 2002, Clay Patman had a confrontation with Alfred King, whose nickname is "D." Following this confrontation, Appellant, one of D. King's two sons, stepped forward and shot Patman in the abdomen at close range. Then, while Patman was running away, Appellant, whose nickname is "Tony Bony," shot Patman a second time in the arm.

When police arrived at the scene, Patman immediately told them that he had been shot by "D. King's son." Shortly thereafter, while Patman was being prepared for surgery in the hospital, he recounted the entire story for police, and he stated once again that he had been shot by "D. King's son" who was wearing a red wave cap at the time

---

[1] In his improperly compound enumeration of error, King also contends that the verdict was against the weight of the evidence. "But the weight of the evidence is a matter for consideration in the trial court, not this court, which considers the sufficiency of the evidence." (Punctuation omitted.) *Goodson v. State*, 242 Ga. App. 167 (1) (529 SE2d 175) (2000).

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Bartlett v. State*, 244 Ga. App. 49 (537 SE2d 362) (2000).

of the shooting. The following day, the police met with Patman a second time and showed him a picture of Andrew King, D. King's other son. Patman told police that Andrew King had not shot him, but that his other son, "Tony Bony," was the shooter. Patman further indicated that he knew Appellant and had spoken with him earlier in the week. Later the same day, police presented Patman with a six-photo lineup from which Patman positively identified Appellant as the man who shot him.

Minutes after the shooting occurred, Phyllis Stevens called police to report that she had witnessed the crime. Stevens, who had known Appellant since he was a child, stated that she had clearly seen Appellant shoot Patman on the night in question. She also stated that, at the time of the shooting, Appellant was wearing a red wave cap. The following day, police interviewed Stevens at her place of employment. After she recounted that she had seen Appellant shoot Patman, Stevens was shown a single photograph of Appellant, and she confirmed that he had been the shooter.

This evidence more than amply supported Appellant's convictions. See *Jackson,* supra.

2. Appellant contends that the photo identifications made by both Patman and Stevens were improperly suggestive and should have been dismissed. As an initial matter, Appellant has waived this argument for purposes of appeal, as he did not object to this identification evidence when it was introduced at trial. "Enumerated errors which raise issues for the first time in a motion for new trial or on appeal present nothing for review." (Punctuation omitted.) *Horner v. State.*[4] Moreover, even if Appellant had preserved these contentions, any error would be harmless, as both witnesses stated that they knew the identity of the shooter and in fact identified him by name prior to being shown his photo. See *Epps v. State.*[5]

3. Appellant contends that the trial court erred by admitting statements made by Patman pursuant to the necessity exception to the hearsay rule. The record reveals that, prior to Appellant's trial, Patman died from injuries unrelated to those inflicted upon him by Appellant. At trial, Appellant conceded that those statements made by Patman at the scene of the shooting would be admissible under the res gestae exception to the hearsay rule. Appellant contended, however, that any statements made by Patman once he had been taken to the hospital should not have been admitted into evidence.

Even if we were to accept Appellant's argument, Patman's statements made after his hospitalization were merely cumulative of: (1)

---

[4] *Horner v. State,* 257 Ga. App. 12, 16 (4) (570 SE2d 94) (2002).
[5] *Epps v. State,* 262 Ga. App. 113, 116 (4) (584 SE2d 701) (2003).

Patman's statements made at the scene that he had been shot by D. King's son; and (2) Stevens' direct testimony that she saw Appellant shoot Patman. "Evidence which is cumulative of other legally admissible evidence of the same fact, renders harmless admission of incompetent evidence." *Lynn v. State*.[6] As such, even if erroneous, the admission of Patman's statements at the hospital was harmless, and this enumeration lacks merit.

4. Appellant contends that the trial court erred by denying his motion for a mistrial after the prosecutor made an allusion to prior testimony at a probation revocation hearing, thereby impermissibly bringing his character into evidence. Again, this enumeration lacks merit.

The record shows that, while questioning Appellant's father, the prosecutor asked: "Do you remember testifying at a probation revocation hearing?" At that point, the trial court, sua sponte, immediately stopped testimony and issued a curative instruction to the jury that they should disregard the statement. Nonetheless, Appellant objected and moved for a mistrial, contending that his character had been improperly placed into evidence.

As a general rule, it is in the trial court's discretion whether to grant a mistrial based on improper character evidence. *Sims v. State*.[7] In considering whether the trial court properly denied the motion, we may consider "the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety." *Sweeder v. State*.[8]

Having considered the evidence introduced at trial, the nature of the character evidence about which Demarlos King complains, and the trial court's immediate curative instruction, we cannot say that the trial court abused its discretion in denying Appellant's motion for a mistrial in this case. See *Babb v. State*.[9]

5. Finally, Appellant contends that the trial court erred by ultimately imposing a harsher sentence than one he had earlier been offered by the State in a plea agreement which he ultimately rejected. This enumeration is patently erroneous.

Appellant was sentenced as follows: (1) ten years confinement and ten years probation for aggravated assault; (2) ten years confinement to run concurrently for aggravated battery; and (3) five years confinement to run consecutively for possession of a firearm during the commission of the crimes against Patman. Each part of this

---

[6] *Lynn v. State*, 181 Ga. App. 461, 464 (2) (352 SE2d 602) (1986).

[7] *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997).

[8] *Sweeder v. State*, 246 Ga. App. 557, 561 (5) (541 SE2d 414) (2000).

[9] *Babb v. State*, 252 Ga. App. 518, 519 (3) (556 SE2d 562) (2001).

sentence was well within statutory limits: (1) maximum confinement for aggravated assault is twenty years (OCGA § 16-5-21 (b)); (2) maximum confinement for aggravated battery is twenty years (OCGA § 16-5-24 (b)); and (3) punishment for possession of firearm during certain crimes is five years confinement to run consecutively with the sentence for the underlying crime (OCGA § 16-11-106 (b)).

This Court will not review for legal error any sentence within the statutory limits, and any question of excessiveness should be addressed by the sentence review panel as provided in OCGA § 17-10-6. *Harden v. State.*[10] Accordingly, Appellant's enumeration raises nothing for this Court to review.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED SEPTEMBER 16, 2004.

*Daniel J. Cahill, Jr.,* for appellant.

*Kenneth W. Mauldin, District Attorney, John M. Chenhall, Assistant District Attorney,* for appellee.

---

[10] *Harden v. State,* 239 Ga. App. 700, 702 (3) (521 SE2d 829) (1999).